Roy SUN, Appellant,

v.

STATE of Alaska, Doug Norris, and
Randy Crawford, Appellees.

No. S–4251.

Supreme Court of Alaska.

April 10, 1992.

C.R. Kennelly, Stepovich, Kennelly & Stepovich, P.C., Anchorage, for appellant.

Burton C. Biss, Biss and Holmes, Wasilla, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

RABINOWITZ, Chief Justice.

Roy Sun filed a personal injury complaint in superior court in which it was alleged that Alaska State Troopers, Doug Norris and Randy Crawford, used excessive force by shooting him a number of times while attempting to apprehend him. Thereafter, Norris, Crawford, and the state moved for summary judgment on the basis that AS 09.17.030 precluded Sun from recovering any damages. The superior court granted the motion and this appeal followed.

I. FACTS AND PROCEEDINGS

While drinking heavily, Sun became angry at his nephew, Jeffrey Sun. Throughout his subsequent search of Shungnak for his nephew, whom he thought had removed his supply of liquor, Sun was armed with a .22 caliber rifle.

After turning off the village's power plant, Sun broke into the public safety building, shot out the tires of Shungnak's public safety officer's three wheeler, and shot several sled dogs. At times Sun fired indiscriminately into various houses, pointed his rifle at the public safety officer, and also shot at Calvin Black.

After a futile attempt to disarm Sun, the public safety officer established radio communication with the Alaska State Troopers. After being advised of the details of Sun's actions, Troopers Norris and Crawford flew to Shungnak. Upon their arrival they were informed that Sun was walking up the trail from the river to the village. Troopers Crawford and Norris then went to intercept Sun before he re-entered the village. Trooper Crawford was armed with a 12 gauge shotgun, while Trooper Norris carried a .223 caliber, Mini 14, high powered rifle.

According to Trooper Crawford the following events occurred:

> Trooper Norris and myself went to the head of the trail which was normally used to walk from the beach toward town and we saw Sun coming up the trail. We got into positions to block Sun from entering town and we both identified ourselves and both instructed Mr. Sun to drop his rifle several times.
>
> ... Mr. Sun came within approximately 15 feet of me, and turned his rifle toward me with his finger on the trigger. I do not know whether he fired first, but I reacted by firing two rounds at Mr. Sun with my weapon. He moved backwards down the hill but still retained the rifle in his hand and I fired two additional rounds at which time he dropped the rifle and fell down the hill. Trooper Norris and myself immediately called for health aide assistance and transported Mr. Sun to the clinic and made arrangements to evacuate him to a hospital.[1]

Trooper Norris' version of the critical events is as follows:

> he refused to obey our orders to drop the rifle even though I believe he recognized Trooper Norris and myself. We were both in full uniform.

---

1. In his affidavit, Trooper Crawford further stated that:

 I was acquainted with Mr. Sun and I thought I would be able to talk him out of the rifle but

As Roy Sun approached to where we could observe him, he was told to put down his rifle.... We identified ourselves and instructed Roy Sun to drop his rifle several times. Instead of doing so, Mr. Sun turned toward Corporal Crawford bringing his rifle to bear with his finger on the trigger. I believed we were both in immediate danger of being shot, and that if we did not stop Mr. Sun that other persons in the village were in danger of being shot by him. I fired my weapon at Mr. Sun to stop him. When I fired, he moved backward down the hill but still held the rifle and did not appear to be disabled or dissuaded. I fired again and he dropped the rifle, and fell out of view, down a hill.

In an affidavit Roy Sun averred in part:

That I did not point the 22 long rifle that I was carrying at them. I did not shoot the rifle. I was merely trying to walk home. I made no threats at them verbally or otherwise.

... That I recall the officers being there and that they shot me. I fell to the ground. I remember thinking that they only shot me once.

... That I was shot immediately after I saw the two men.

As noted above, Trooper Crawford, Norris, and the state moved for summary judgment seeking dismissal of Sun's complaint on the basis of AS 09.17.030. This statute provides:

A person who suffers personal injury or death may not recover damages for the personal injury or death if the injuries or death occurred while the person was engaged in the commission of a felony, the person has been convicted of the felony, including conviction based upon a guilty plea or plea of nolo contendere, and the felony substantially contributed to the injury or death. This section does not affect a right of action under 42 U.S.C. 1983.

The troopers and the state argued, in part, that "as a matter of law ... this plaintiff may not recover damages for personal injury when the injuries occurred while the plaintiff was engaged in the commission of a felony." Sun opposed the summary judgment motion with his own affidavit as well as affidavits contesting the issue of whether Sun's conduct "substantially contributed" to his injuries. In resolving the motion the superior court noted that:

[Sun] plead "Nolo Contendre" [sic] to Count VII of an Indictment dated July 31, 1987 in the case of *State of Alaska v. Roy Sun*, 2KB–S87–436CR., Count VII charging Assault in the Third Degree, which reads as follows:

"That on or about the 5th day of July, 1987, at or near Shungnak in the Second Judicial District, State of Alaska, ROY SUN did unlawfully and recklessly place Alaska State Trooper Randy Crawford, a uniformed police officer in fear of imminent serious physical injury by means of a dangerous instrument, to wit: a gun."

Based on Sun's plea of nolo contendere, the superior court concluded that Sun was engaged in the commission of a felony at the time he sustained his injuries, that Sun was convicted of the felony, and that the felony substantially contributed to Sun's injuries. On the basis of the foregoing, the superior court granted the troopers' and the state's motion for summary judgment pursuant to AS 09.17.030.

## II. DOES AS 09.17.030 DEPRIVE SUN OF DUE PROCESS UNDER ALASKA'S CONSTITUTION?

 Sun contends that AS 09.17.030 violates the due process clause of Alaska's Constitution.[2] More particularly, Sun argues that application of AS 09.17.030 to the factual circumstances of the case at bar would nullify Alaska's statutes on the use of excessive or deadly force.[3] In this regard Sun states that:

---

2. Article I, section 7 of the Alaska Constitution provides:

No person shall be deprived of life, liberty or property without due process of law....

3. Sun relies, in part, on the provisions of AS 11.81.370 which state in part:

[t]he officer may use deadly force only when and to the extent the officer reasonably be-

Allowing summary execution of a burglar, simply because he was in the process of committing a felony, would violate every constitutionally fair procedure and the entire concept of individual justice, so extensively written into or [sic] laws. Applying this statute, to … factual situations, as in the case at bar, would do just that.

In opposition, Norris, Crawford and the state argue that:

When the conditions of AS 09.17.030 are satisfied, a felon has no right to recover damages. That disqualification does not create a right in all of the rest of the population to damage the felon. A shield is not a sword. Justification is a defense, not a disqualification of prospective plaintiffs. Prohibiting Roy Sun from recovering damages is not the same as shielding the State from liability. The State still remains liable to the penalties of the criminal law and to the civil penalties of their personnel and employment rules and regulations, including license and certification suspension.

*State v. Sundberg,* 611 P.2d 44, 50 (Alaska 1980) is relevant to the resolution of this issue. There we said:

The fleeing felony suspect advances two distinct but interrelated interests: the interest in not being deprived of life or limb because he committed a crime (a right to life) and the interest in suffering no deprivation until convicted in a court of law (a right to trial). When deadly force is used to arrest nonviolent felony suspects … the deprivation of life or limb without trial is offensive to the presumption of innocence and other values central to our conception of justice and should not be condoned except in emergency situations. (Quoting Comment, *Deadly Force to Arrest: Triggering Constitutional Review,* 11 Harv. C.R.–C.L. L. Rev. 361, 372–73 (1976) ).

In *Sundberg* we further observed that we "would entertain grave doubts as to the constitutionality of a statute which permitted peace officers to employ deadly force against all fleeing felons regardless of the particular circumstances." *Id.* at 50 n. 16. The broad language of AS 09.17.030 could be read to immunize unconstitutional use of deadly force from a civil suit, but it is in no sense a grant of immunity from criminal prosecution. AS 09.17.030 does not change the law of arrest set out in AS 11.81.370, wherein deadly force may be utilized by a police officer only in narrowly defined circumstances. Where such circumstances do not exist, the police officer may be prosecuted under the criminal law for homicide or other crimes, may be administratively sanctioned, and may be civilly sanctioned under 42 U.S.C. § 1983. Because AS 09.17.030 did not change the substantive law of arrest, and because significant sanctions remain for violations of the substantive law of arrest, we hold that AS 09.17.030 does not deprive Sun of due process under the constitution of Alaska.[4]

## III. DID THE LEGISLATURE INTEND AS 09.17.030 TO APPLY TO THE CIRCUMSTANCE WHERE EXCESSIVE USE OF DEADLY FORCE IS APPLIED?

Here Sun advances an argument which is closely related to the discussion in Part II above. Sun argues that the legislature's objective in enacting AS 09.17.030 was to alleviate a "perceived 'crisis' in insurance rates and availability." *Lake v. Construction Mach. Inc.,* 787 P.2d 1027, 1031 n. 9 (Alaska 1990). Sun further argues that AS 09.17.030 must be read together with AS 11.81.370, so that the reasonable belief standard provided for in AS 11.81.370 defines the "felony substantially contributed to the injury or death" stan-

---

lieves the use of deadly force is necessary to make the arrest or terminate the escape.…

**4.** Questions concerning the constitutionality of a statute are questions of law and are reviewed *de novo. See Hicklin v. Orbeck,* 565 P.2d 159 (Alaska 1977); *rev'd on other grounds,* 437 U.S. 518,

98 S.Ct. 2482, 57 L.Ed.2d 397 (1978). This court has a duty to construe statutory provisions, whenever possible, to avoid the dangers of unconstitutionality. *Keith v. State,* 612 P.2d 977, 986 (Alaska 1980).

dard of AS 09.17.030.[5]

Alaska Statute 09.17.030 "embodies the public policy articulated in *Adkinson [v. Rossi Arms Co.,* 659 P.2d 1236, 1240 (Alaska 1983)]." *Lord v. Fogcutter Bar,* 813 P.2d 660, 663, (Alaska, 1991). *Adkinson* states that "allowing a criminal defendant, who has been convicted [after a trial] of an intentional killing, to impose liability on others for the consequences of his own anti-social conduct runs counter to basic values underlying our criminal justice system." 659 P.2d at 1240. In *Fogcutter,* this court used *Adkinson* to bar a felon's civil claim under the dram shop act (AS 04.21.020) for damages, because he was convicted of kidnapping, rape, and assault. *Id.* at 663.

We are in agreement with the troopers' and state's argument that "Our legislature has decided that it will not permit a felon to recover for personal injuries he received which were substantially contributed to by his felonious activity." [6] On the other hand, if the evidence shows that commission of the felony did not substantially contribute to plaintiff's injury or death, then AS 09.17.030 would not bar plaintiff's suit.

## IV. ARE THERE GENUINE ISSUES OF MATERIAL FACT WHICH PRECLUDE SUMMARY JUDGMENT?

The parties agree that AS 09.17.030 bars Sun's claims for damages if the evidence

shows that (1) Sun sustained his injuries while engaged in the commission of a felony; (2) that Sun was convicted of the felony (including a conviction based on a plea of nolo contendere); and (3) that commission of the felony substantially contributed to Sun's injuries.

■ Sun concedes that the proof shows he was convicted of assaulting Trooper Crawford with a gun (Assault in the Third Degree—AS 11.41.220(a)(1)). Concerning the remaining two elements, Sun's position is that the evidence does not show that he was injured during the commission of a felonious assault nor does the evidence show that the felonious assault substantially contributed to his injuries.[7]

As noted above, Sun opposed the motion for summary judgment with his own affidavit attesting that he did not point his rifle at or fire upon the troopers. He further attests that the troopers did not give him an opportunity to surrender. Sun also offered the affidavits of Roy Hendricks and Paul Barnhardt in opposition to the troopers' motion for summary judgment. Hendricks and Barnhardt, both former police officers, attest that the troopers' affidavits are inconsistent with the physical evidence, police reports, and medical records. Barnhardt concludes that Sun's injuries are more consistent with Sun's version of the facts.

---

5. AS 11.81.370 provides in part:

 The [police] *officer may use deadly force only when* and to the extent the officer *reasonably* believes the use of force is necessary to make the arrest or terminate the escape or attempted escape from custody of a person the officer reasonably believes
 (1) has committed or attempted to commit a felony which involved the use of force against a person....
 (Emphasis added).

6. Appellees further argue:

 Whether viewed as a disability/disqualification to Mr. Sun, or an extension of the privilege of self-defense and defense of others to the Troopers (as viewed by Roy Sun), the result in this instance is the same. One lawfully using deadly force against his victim simply has no legally protected interest against his victim defending himself with

deadly force, and must accept whatever degree of personal injury or death results. Damage recovery redress is simply not allowed.

7. In reviewing a grant of summary judgment, this court must draw all inferences of fact in favor of the non-moving party. *Kodiak Elec. Ass'n v. DeLaval Turbine, Inc.,* 694 P.2d 150, 152 n. 1 (Alaska 1984). The moving party has the burden of proving that his opponent's case has no merit. *Riley v. Northern Com'l Co.,* 648 P.2d 961, 966 (Alaska 1982). If, after examining the record, we discover the existence of a genuine issue as to any material fact, or it appears that the prevailing party was otherwise not entitled to summary judgment, this court must reverse the order and remand the case for trial. *Ellis v. City of Valdez,* 686 P.2d 700, 702 (Alaska 1984); *Breck v. Ulmer,* 745 P.2d 66, 69–70 n. 6 (Alaska 1987).

In ruling on the summary judgment motion the superior court concluded:

> under the uncontroverted facts included in defendant's felony conviction of Assault in the Third Degree upon Trooper Crawford, that the Plaintiff's acts in committing the felony substantially contributed to Plaintiff's injuries. There is no issue of fact as to "the causal relationship between the felonies that Mr. Sun stands convicted of and the injuries suffered." See: Plaintiff's *Memorandum*, supra, at page 11. Plaintiff was charged with putting Trooper Crawford in fear of imminent serious physical injury with a firearm at the same date, time and place in a criminal action. Troopers, including Trooper Crawford, shot plaintiff a number of times on that same date, time and place. Plaintiff was convicted of this felony assault upon Trooper Crawford. This civil action arises from these very same facts. Without question, the felony for which plaintiff was convicted of substantially contributed to his injuries. Plaintiff has failed to "clearly and specifically demonstrate that he can produce admissible evidence disputing the movant's evidence." *Southeast Alaska Const. [v. State]*, supra [791 P.2d 339] at 342. [ (Alaska 1990) ]. AS 09.17.030 does not provide for the fine distinction proposed by plaintiff, i.e., alot [sic] of shots at him were not justified, though the first shot may have been. His injuries occurred while he was engaged in a felony; he was convicted of this felony; the felony substantially contributed to his injuries. These findings and conclusion are undisputed. Summary judgment under Civil Rule 56 must therefore be entered herein in favor of defendants pursuant to AS 09.17.030.

■ Implicitly, the superior court assumed that a conviction based upon a nolo contendere plea has collateral estoppel effect in subsequent civil litigation. We have expressly refrained from deciding whether a plea of nolo contendere has collateral estoppel effect. *Pletnikoff v. Johnson*, 765 P.2d 973, 976 n. 2 (Alaska 1988). Nevertheless we conclude that AS 09.17.-030 has a clear meaning in this context.[8] The statute is intended to preclude a person who receives injuries in the course of a felony, and pleads nolo contendere to that felony from later contesting whether he actually committed the felony. Thus, the superior court correctly ruled that Sun is collaterally estopped from denying the fact that he pointed his rifle at Trooper Crawford.[9]

■ This conclusion, however, does not end our review of the superior court's grant of summary judgment. For, as noted above, AS 09.17.030 contains a third element, namely, that commission of the felony "substantially contributed to the injury."

In applying this element of AS 09.17.030 to the facts appearing in this record we find we are in agreement with the superior court's conclusion that "AS 09.17.030 does not provide for the fine distinction proposed by plaintiff, i.e., alot [sic] of shots at him were not justified, though the first shot may have been."[10] Review of the

---

**8.** We have previously stated that:
> [t]he goal of statutory construction is to give effect to the legislative intent, with due regard for the meaning the statutory language conveys to others. In this respect, we have repeatedly stated that unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accord with their common usage.

*Tesoro Alaska Petro. v. Kenai Pipe Line Co.*, 746 P.2d 896, 905 (Alaska 1987) (citations omitted).

**9.** Given that this holding is based on the express language of AS 09.17.030, we need not decide whether a conviction based on a nolo contendere plea has collateral estoppel effect in other contexts.

**10.** In their brief before this court the Troopers and state argue the point in the following fashion:
> The Troopers answered deadly force with deadly force. Roy Sun would like to argue over a careful gauging of the number of shots the Troopers fired,[5] but because of this statute, fine distinctions in the amount of deadly force used are precluded, and Roy Sun cannot state a claim for relief if his personal injuries stem from the commission of the felony for which he was convicted.

record fails to disclose the existence of a genuine issue of material fact as to whether or not Sun's assault of Trooper Crawford substantially contributed to Sun's injuries. Nothing in the record shows a break in the nexus between Sun's assault of Trooper Crawford with a dangerous weapon and the Troopers' instantaneous response thereto with deadly force. Here there is no indication that Sun clearly and unequivocally broke off his assault prior to receiving his injuries. There simply is no genuine issue of material fact as to whether Sun's criminal assault substantially contributed to the injuries he received.[11]

AFFIRMED.

---

5. The troopers are entitled to respond to deadly force by using overwhelming deadly force and win the battle, not just tie.

11. Implicit in our holding is that nothing in Hendricks' or Barnhardt's affidavits give rise to genuine issues of material fact.