**Michael LAMB, Appellant,**

v.

**Jeffrey ANDERSON, Appellee.**

No. S–11936.

Supreme Court of Alaska.

Nov. 17, 2006.

---

37.  *Metcalfe,* 110 P.3d at 981.

38.  *Id.*

39.  *Id.*

Joseph L. Paskvan, Paskvan & Ringstad, P.C., Fairbanks, for Appellant.

John J. Burns, Borgeson & Burns, P.C., Fairbanks, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Jeffrey Anderson was driving drunk on the Parks Highway when he crashed his truck into Michael Lamb's motorcycle. Lamb was seriously injured. Anderson was criminally charged, was convicted on his plea of no contest to second-degree assault, failing to render assistance, and driving under the influence, and he was sentenced to prison. Lamb subsequently brought a civil negligence action against Anderson. Lamb sought partial summary judgment as to liability for punitive damages on the ground that Anderson was collaterally estopped from relitigating recklessness due to his earlier criminal plea. The superior court denied the motion. We granted Lamb's petition for review. Because Anderson's conviction for assault collaterally estops him from relitigating the essential elements of that offense, and because one of the elements of assault is recklessness, we reverse.

## II. FACTS AND PROCEEDINGS

### A. Facts

On June 14, 2003 Michael Lamb was riding his motorcycle northbound on the Parks Highway near Ester. Anderson was also proceeding northbound, driving a three-quar-ter ton Dodge Ram pickup. Anderson apparently passed a tractor-trailer rig at high speed and, to avoid oncoming traffic, cut in front of the tractor-trailer. In doing so Anderson collided with the rear end of Lamb's motorcycle. Lamb was seriously injured, requiring wrist and knee surgeries. Anderson claims not to have any memory of the accident or of leaving the scene.

Anderson had been drinking heavily prior to the accident: He consumed a total of at least four double Jack Daniel's at two bars in Nenana. He then drove to his home in Fairbanks, where he apparently drank most of a large bottle of tequila shortly before returning to the road. Finally, Anderson also had with him in the truck a "fanny pack" with three small bottles of alcohol in it.

Blood tests at Fairbanks Memorial Hospital indicated that Anderson had a blood alcohol content of 286 milligrams per 100 milliliters of blood, approximately three-and-one-half times the legal limit for driving while intoxicated.[1]

Anderson subsequently pled no contest to assault in the second degree, failing to render assistance to an injured person after an accident, and driving under the influence. Charges of eluding a police officer and refusal to take a chemical test were dismissed. On December 8, 2003 the superior court sentenced Anderson to nearly seven years in prison (with slightly more than three years suspended), and six years probation, ordered him to pay $3,175 in fines and surcharges, and revoked his driver's license for five years. Anderson remains incarcerated and has since been treated for alcoholism.

### B. Proceedings

Michael Lamb filed suit against Anderson in October 2003. He complained of negligence and also sought punitive damages for outrageous or reckless conduct. In September 2004 Lamb moved for partial summary judgment as to Anderson's liability for punitive damages. The superior court denied the motion without comment in March 2005.

---

1. Under Alaska law if a person has "80 milligrams or more of alcohol per 100 milliliters of the person's blood," then "it shall be presumed that the person was under the influence of an alcoholic beverage." AS 28.35.033(a)(3).

Lamb sought reconsideration, but his motion was denied and Lamb filed a petition for review in this court. We granted the petition in July and heard oral argument in December. After oral argument, we issued an order on December 22 granting relief to Lamb, so that the trial, scheduled for January 2006, could proceed.[2] We noted that an opinion fully explaining our order would follow.[3] This is that opinion.

## III. STANDARD OF REVIEW

The extent to which a civil defendant is collaterally estopped from denying the essential elements of an underlying crime by a conviction based on a previous plea of *nolo contendere* is a question of law. We apply our independent judgment to questions of law, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[4] This case comes before us as review of a denial of partial summary judgment. A party is entitled to summary judgment if there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In determining whether a party is entitled to judgment as a matter of law, all reasonable inferences of fact must be drawn against the moving party and in favor of the non-moving party."[5]

## IV. DISCUSSION

### A. A Civil Defendant Who Has Entered a No Contest Plea to a Criminal Charge Is Collaterally Estopped by the Resulting Conviction from Denying the Essential Elements of the Crime in a Subsequent Civil Action.

#### 1. Current law applies estoppel to the civil plaintiff.

Lamb seeks to establish Anderson's recklessness as a matter of law. Before considering that question, we must first determine the extent to which a conviction based on a no contest plea has preclusive effect on a civil *defendant* in a subsequent civil action. Although we have not previously determined the full extent of a no contest plea's preclusive effect, our case law clearly indicates that, in general, a no contest plea collaterally estops a civil *plaintiff* from denying the essential elements of his underlying crime in a resulting civil action.

In *Scott v. Robertson,* we adopted the rule that a criminal conviction resulting from a jury trial could be introduced as "conclusive proof" (rather than merely persuasive evidence) "of the facts necessarily determined."[6] In that case, Robertson had been convicted by a jury of operating a motor vehicle under the influence and was subsequently sued for damages by Scott. We held that Alaska courts could

> admit criminal convictions as evidence in subsequent civil trials where: (1) the prior conviction is for a serious criminal offense; (2) the defendant in fact had a full and fair hearing; and (3) it is shown that the issue on which the judgment is offered was necessarily decided in the previous trial.[7]

We added a cautionary note: such convictions would serve as conclusive, rather than prima facie, evidence "of the facts necessarily determined" so long as the jury in the civil case was properly instructed to avoid the possibility that it would "take the prior conviction as presumptive of complete liability in the civil action."[8] The "[i]nstructions to the jury should include exactly which facts were necessarily determined in the prior conviction and what facts remain for the jury to decide."[9]

---

2. *Lamb v. Anderson,* 126 P.3d 132 (Alaska 2005).

3. *Id.* at 133.

4. *Burcina v. City of Ketchikan,* 902 P.2d 817, 820 n. 4 (Alaska 1995) (quoting *Shanks v. Upjohn Co.,* 835 P.2d 1189, 1193 (Alaska 1992)); *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

5. *Burcina,* 902 P.2d at 820 n. 4 (citations omitted).

6. *Scott v. Robertson,* 583 P.2d 188, 193 & n. 27 (Alaska 1978) (citations omitted).

7. *Id.* at 191–92.

8. *Id.* at 193 (citation omitted).

9. *Id.* at 193–94 (citation omitted).

Shortly after *Scott,* we decided in *Lowell v. State*[10] that convictions resulting from nolo pleas "may be used ... to impeach a witness, including a defendant/witness, who testifies in a later proceeding."[11] But *Lowell* also suggested that allowing convictions based on nolo pleas to be used for impeachment purposes might not necessarily mean that such convictions could also be used for the broader purpose of establishing the operative facts of the crime for which the nolo plea had been entered. Specifically, our discussion in *Lowell* referred with approval to a line of cases holding "that the only forbidden consequence of a nolo plea is its use as an admission in a civil action, and that all other uses of the conviction are permissible as if the plea were of guilty, not nolo."[12] Today's case requires us to decide whether this language should be broadly read to bar convictions based on nolo pleas from being used to prove the underlying facts of the prior criminal case or whether it should be more narrowly read to mean only that the nolo plea itself may not be used as a testimonial admission.[13]

Alaska Statute 09.65.210 establishes that a person who has committed a felony will be collaterally estopped by the felony conviction from seeking damages for injuries incurred during the commission of the felony. We interpreted the former version of that statute, AS 09.17.030, in *Sun v. State,* where the defendant went on a drinking and shooting rampage in Shungnak and was shot while confronting two state troopers.[14] Sun subsequently brought a personal injury action against the two troopers.[15] Although we noted that "[w]e have expressly refrained from deciding whether a plea of *nolo contendere* has collateral estoppel effect,"[16] we felt that the statute clearly barred Sun's personal injury action.[17] We carefully cabined our decision, however, noting that because "this holding is based on the express language of AS 09.17.030, we need not decide whether a conviction based on a nolo contendere plea has collateral estoppel effect in other contexts."[18] This echoed our caution in *Pletnikoff v. Johnson,* where the majority stated that "[w]e express no view as to whether the conviction based on Pletnikoff's plea of nolo contendere might have collateral estoppel consequences because that subject was not adequately briefed by the parties."[19]

In dissent in *Pletnikoff,* then-Chief Justice Matthews reached the issue that the majority declined to reach. Justice Matthews "acknowledge[d] that under federal law an exception is made to the rule of collateral estoppel for convictions based on pleas of *nolo contendere*" but noted that Alaska's treatment of the *nolo contendere* plea was sufficiently different from the federal treatment that the imposition of collateral estoppel effect was justified.[20] The Alaska Evidence Rules lack several specific provisions found in the Federal Rules.[21] Moreover, because "a defendant may plead *nolo* as a matter of right, guilty pleas are virtually non-existent in felony cases in Alaska."[22] In

10.  574 P.2d 1281 (Alaska 1978).

11.  *Id.* at 1285.

12.  *Id.*

13.  *Cf. Pletnikoff v. Johnson,* 765 P.2d 973, 981 (Alaska 1988) (Matthews, J., dissenting) ("I take this language [from *Lowell* ] literally. A *nolo* plea may not be used as an admission in a civil action. However, insofar as a *nolo* plea results in a conviction, the conviction may be used for any purpose for which any conviction based on a plea of guilty might be used."); *see also Burcina v. City of Ketchikan,* 902 P.2d 817, 822 (Alaska 1995) (citing Justice Matthews's *Pletnikoff* dissent in discussing "Alaska rules and decisional law on the subject of *nolo contendere* pleas").

14.  830 P.2d 772, 773–74 (Alaska 1992).

15.  *Id.*

16.  *Id.* at 777 (citing *Pletnikoff,* 765 P.2d at 976 n. 2).

17.  *Id.*

18.  *Id.* at 777 n. 9.

19.  *Pletnikoff,* 765 P.2d at 976 n. 2.

20.  *Id.* at 979 (Matthews, C.J., dissenting).

21.  *Id.* at 979–80.

22.  *Id.* at 981 n. 2. *See* Alaska R.Crim. P. 11. This paucity of actual guilty pleas seems to continue, even in plea bargains. *See, e.g., Snelling v. State,* 123 P.3d 1096, 1097 (Alaska App.2005); *Dayton v. State,* 120 P.3d 1073, 1075 (Alaska App.2005); *Simon v. State,* 121 P.3d 815 (Alaska App.2005); *Greist v. State,* 121 P.3d 811, 812 (Alaska App.

Alaska, then, the nolo plea is for nearly all purposes the equivalent of a guilty plea.[23]

The full court adopted Justice Matthews's *Pletnikoff* position in *Burcina v. City of Ketchikan.*[24] Burcina pled *nolo contendere* to arson and was sentenced to two and one-half years in prison.[25] He subsequently filed suit against his mental health providers, alleging that their negligence had led to the psychotic episode in which he set fire to their building.[26] We held that Burcina was collaterally estopped from relitigating the issue of his mental capacity because his criminal conviction for arson already established that he had the requisite level of intent.[27] We noted that Burcina could have asserted the defenses of insanity or mental disease, or he could have pled guilty but mentally ill; instead, he opted to plead no contest.[28]

In *Burcina* we took the step that we had declined to take in *Sun v. State,*[29] holding that a plea of *nolo contendere* has collateral estoppel effect:

> Although our holding [in *Sun*] was based on the express language of [former] AS 09.17.030, we have noted that [that statute] embodies the public policy principle enunciated in Alaska case law.... We now

combine and clarify these rules. We hold, based on public policy grounds, that a civil plaintiff is collaterally estopped from relitigating any element of a criminal charge to which he has pled *nolo contendere.*[30]

Finally, in *Howarth v. State, Public Defender Agency*[31] we followed *Burcina* in prohibiting a civil plaintiff from relitigating the essential elements of a criminal charge to which he had pled no contest.[32] Howarth, who had been convicted of first-degree sexual assault on his plea of *nolo contendere,* was allowed to withdraw his plea because his appointed attorney had ineffectively represented him.[33] He later pled no contest to second-degree sexual assault, and then sued his former attorney for malpractice.[34] We held that Howarth, by pleading no contest to the reduced charge, was precluded from denying that he had committed the essential elements of that crime.[35] *Howarth* clarified that for purposes of the first prong of the *Scott* test[36] (whether the prior conviction is for a serious offense), all felonies qualified as serious offenses even if no jail time were imposed.[37]

■ The above analysis demonstrates our progression over time in addressing no con-

---

2005); *Grohs v. State,* 118 P.3d 1080, 1080–81 (Alaska App.2005); *Edmonds v. State,* 118 P.3d 17, 18 (Alaska App.2005); *State v. Gibbs,* 105 P.3d 145, 146 (Alaska App.2005) (no contest plea bargains); *but see Northcut v. State,* 2005 WL 3508652 at *1, Mem. Op. & J. No. 5028 (Alaska App., December 21, 2005) (unpublished); *Grasser v. State,* 119 P.3d 1016, 1017 (Alaska App. 2005); *Maher v. State,* 2005 WL 1131164 at *1, Mem. Op. & J. No. 4985 (Alaska App., May 11, 2005) (unpublished) (guilty pleas).

23. Functional differences appear to be exceedingly minor. In *Pletnikoff,* Chief Justice Matthews argued that the avoidance of public humiliation should be "the only benefit" of the Alaska nolo plea. *Pletnikoff,* 765 P.2d at 982 (Matthews, C.J., dissenting). We agree.

24. 902 P.2d 817 (Alaska 1995).

25. *Id.* at 819.

26. *Id.*

27. *Id.* at 821. *See* AS 11.46.400 (defining first-degree arson as "intentionally damag[ing]" the property of another by fire).

28. *Id.* at 822.

29. 830 P.2d 772, 777 & n. 9 (Alaska 1992).

30. *Burcina,* 902 P.2d at 822.

31. 925 P.2d 1330 (Alaska 1996).

32. *Id.* at 1332.

33. *Id.* at 1331.

34. *Id.*

35. *Id.* at 1333.

36. *Scott v. Robertson,* 583 P.2d 188, 191–92 (Alaska 1978).

37. *Howarth,* 925 P.2d at 1334–35. Howarth had been convicted on his plea of no contest, but after serving six years he successfully withdrew his plea. Pending trial, he again negotiated a plea. He was subsequently sentenced to a term of four years, with credit for time served. He then argued that his offense should not be considered serious because he had not served any additional time in jail as a result of his second no contest plea. We rejected that argument.

test pleas, and our ultimate conclusion that civil plaintiffs are collaterally estopped from relitigating the essential elements of the crimes to which they pled no contest in prior criminal proceedings. However, Anderson is a defendant in this civil case. We turn now to the question of whether collateral estoppel applies equally to civil defendants who previously pled no contest to criminal charges.

### 2. Collateral estoppel should also apply to the civil defendant.

Several cases since *Howarth* suggest that extending collateral estoppel to civil defendants would be a reasonable and wholly expected progression in the law. In *Lashbrook v. Lashbrook*, a father was arrested for assault in an incident that also led the mother of his children to petition for a modification of custody.[38] The father pled no contest to the assault charge during the pendency of the custody modification proceedings.[39] The superior court granted the mother full custody of the children without a hearing.[40] We reversed, holding that a separate hearing was required on permanent modification of custody.[41] We noted, however, that "[o]n remand, [the father] will be precluded from challenging the facts which constitute the elements of the offenses to which he pled no contest."[42] *Lashbrook* indicated our inclination to extend the collateral estoppel effect of convictions resulting from nolo pleas to subsequent civil defendants.

We took a similar position in *Richard B. v. State*, where a father challenged the procedural particulars of a termination of parental rights hearing.[43] The father argued that due process required that he, an incarcerated felon, be allowed to testify in person rather than telephonically.[44] We disagreed, noting that live testimony would add little, in part because "Richard would ordinarily be precluded by his conviction from denying the conduct on which it was based."[45] We declined to decide the issue on that basis, however, because Richard was in the process of challenging his conviction. As we did in *Lashbrook*, in *Richard B.* we assumed that a conviction based on a nolo plea would have collateral estoppel effect on a subsequent respondent in a parental rights termination hearing.

■ We have thus shown a clear inclination to apply collateral estoppel effect to the nolo pleas of criminal defendants in subsequent civil litigation, subject to the safeguards of the *Scott* test. We now extend this line of cases to apply to civil defendants. We hold that a conviction based on a no contest plea will collaterally estop the criminal defendant from denying any element in a subsequent civil action against him that was necessarily established by the conviction, as long as the prior conviction was for a serious criminal offense and the defendant in fact had the opportunity for a full and fair hearing.[46]

■ In adopting this rule, we take the occasion to remind our trial courts that, before a no contest plea is accepted in a case involving serious criminal charges, the record should establish the defendant's understanding that a no contest plea will result in a conviction, just as a guilty plea would, and that this conviction could be used in future cases to establish that the defendant engaged

---

**38.** 957 P.2d 326, 327 (Alaska 1998).

**39.** *Id.* at 328.

**40.** *Id.*

**41.** *Id.* at 328–30.

**42.** *Id.* at 330 n. 2 (citing *Burcina v. City of Ketchikan*, 902 P.2d 817, 822 (Alaska 1995)).

**43.** *Richard B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 71 P.3d 811 (Alaska 2003).

**44.** *Id.* at 830.

**45.** *Id.* at 832 (citing *Lashbrook*, 957 P.2d at 330 n. 2 and *Burcina*, 902 P.2d at 822).

**46.** In *Lowell v. State*, 574 P.2d 1281, 1285 (Alaska 1978), we stated in part: "the only forbidden consequence of a nolo plea is its use as an admission in a civil action." To the extent this dictum could be read as limiting the collateral use in a civil action of a conviction based on a nolo plea, that reading would be contrary to the result we reach here today.

in the conduct involved in the charged offense.[47]

We are mindful that the use of a conviction based on a no contest plea for preclusion purposes may smack of unfairness to some. The pleading defendant has not tested the charges against him or her in a court of law, but has instead given up that opportunity in exchange for a quick resolution, saving face, or myriad other reasons. For these reasons we note the trial court's responsibility before accepting a no contest plea in a case involving serious criminal charges.

**B. As a Result of Anderson's Conviction Based on His No Contest Plea to Second Degree Assault, Anderson Is Collaterally Estopped from Denying that He "Evidenced Reckless Indifference to the Interest of Another Person."**

**1. Anderson's conviction is sufficient for preclusive effect.**

■ Lamb argues that, because recklessness is an essential element of Anderson's assault conviction, Anderson should be precluded from arguing in the civil suit that he was not reckless. Furthermore, Lamb argues that, because Anderson's recklessness has been conclusively established, Lamb is entitled to summary judgment on the issue of punitive damages. Anderson replies that recklessness for the purposes of assault is different from recklessness for the purposes of punitive damages, and that the civil forum allows Anderson to introduce evidence as to recklessness that was barred from the criminal proceeding. We hold that Anderson's conviction has preclusive effect as to his recklessness (but not as to his liability for punitive damages, as the next section of this opinion makes clear).

Anderson was convicted of assault in the second degree. Alaska Statute 11.41.210(a)(2) provides: "A person commits the crime of assault in the second degree if that person recklessly causes serious physical injury to another person."[48] Assault in the second degree is a class B felony for which a fine of $100,000 and imprisonment for ten years may be imposed.[49] On the assault charge Anderson was sentenced to

---

**47.** In *Miller v. State*, 617 P.2d 516 (Alaska 1980), we considered the level of inquiry the trial court must make under Criminal Rule 11(f) in deciding whether to accept a proffered nolo plea, stating, "The only inquiry permitted the trial court by Criminal Rule 11 is that of determining whether the plea is knowing and voluntary." *Id.* at 518. Alaska R.Crim. P. 11(f) provides: "The court shall not enter a judgment upon a plea of guilty without first being satisfied that there is a reasonable basis for the plea." We gave Rule 11(f) a narrow reading, rejecting the argument that the rule allows the trial court to require a factual basis for a *nolo* plea from the defendant: "[T]o require a defendant to show that there is a reasonable basis for a plea of *nolo contendere* puts the defendant in the awkward position of having to demonstrate his guilt in order to be allowed to plead *nolo contendere*." *Miller*, 617 P.2d at 518. As the court of appeals correctly noted in *Bratcher v. State*, 681 P.2d 358 (Alaska App.1984), however, the court is not relieved of its duty under Rules 11(c) and (d) to ensure that nolo pleas are made knowingly and voluntarily:

> [A] defendant's right to enter a *nolo contendere* plea despite a claim of innocence does not diminish the court's duty, under Criminal Rule 11(c) and (d), to determine that the plea is knowingly and voluntarily entered. Thus, where a defendant seeks to plead *nolo contendere*, but volunteers statements consistent with innocence, it is crucial that the trial court

conduct an appropriate inquiry, in conformity with the requirements of Criminal Rule 11, to assure that the [profferred] plea is not the result of a misunderstanding of the elements of the offense. While, under *Miller*, the court cannot require the defendant to make a statement acknowledging guilt, nothing in *Miller* precludes the court from conducting a full and careful inquiry, pursuant to Criminal Rule 11, to assure that the defendant has an adequate understanding of the charge to which he seeks to plead.

*Id.* at 361–62 n. 3. Thus, while the trial court cannot refuse to accept a nolo plea on the ground that the defendant will not admit commission of the crime, the court can refuse to accept a plea if the state has not developed a factual basis sufficient to inform the defendant of the nature of the charge to which the defendant is pleading, that is, to establish the defendant's guilt. *See Henson v. State*, Mem. Op. & J. No. 4895 at 4–5, 2004 WL 1567756 (Alaska App., July 14, 2004) (unpublished) (remanding for factual findings where neither party informed sentencing court of factual basis for defendant's plea and defendant disputed basis relied on by court at sentencing).

**48.** AS 11.41.210(a)(2).

**49.** AS 11.41.210(b); AS 12.55.035(b)(3); AS 12.55.125(d).

four and one-half years with one and one-half years suspended.

■ Applying the *Scott* test,[50] we conclude that Anderson's assault conviction should collaterally estop him from denying the essential elements of the offense.[51] As to the first requirement—that the conviction be for a serious criminal offense [52]—the test is clearly satisfied. Assault in the second degree is a felony, and all felonies are serious offenses for the purposes of the rule. The second prong of the test requires that the "defendant in fact had a full and fair hearing." [53] While this language may initially suggest that convictions via plea are disfavored, our opinion in *Scott* clearly contemplated the use of such convictions for collateral estoppel purposes:

> We first require that the prior conviction be for a serious offense in order that the accused have the motivation to defend himself fully. A driver who pleads guilty to a minor traffic violation may have decided merely that the costs of defending outweigh the burden of having such a conviction on his record. Such a conviction is not credible evidence of guilty conduct.[54]

*Scott* described the fair hearing requirement as "designed to prevent the introduction of the prior conviction where there is substantial question as to its validity. Normally, a criminal conviction ... should be admissible absent strong showing of irregularity." [55] The present case has no indicia of irregularity; the fair hearing requirement is met even if a defendant pleads *nolo contendere*, as *Scott* indicates.

The third prong of the *Scott* test requires that the proposition for which the conviction is offered must have necessarily been determined at the previous proceeding, and the civil jury must be carefully instructed as to which facts were and were not necessarily determined.[56] Here, Anderson's recklessness and the fact that he inflicted serious physical injury were necessary elements of his assault conviction; the sentencing judge specifically referred to the statutory provision regarding recklessness. At trial the superior court should ensure that the jury is instructed that the assault conviction establishes only elements that were necessary for the conviction.

### 2. Anderson is estopped from denying recklessness, but the inquiry on punitive damages remains open.

Anderson argues that, even if he is collaterally estopped from relitigating recklessness by his conviction, recklessness in the context of punitive damages is "fundamentally different" from recklessness for the purpose of an assault conviction. This argument is without merit. Alaska law defines recklessness for criminal purposes to occur when a "person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or the circumstance will exist." [57] The punitive damages statute, AS 09.17.020, states in relevant part that "[t]he fact finder may make an award of punitive damages only if the plaintiff proves by clear and convincing evidence that the defendant's conduct ... evidenced reckless indifference to the interest of another person." [58] We have adopted the Restatement view that a party's conduct

> is in reckless disregard of the safety of another if he does an act ... knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but

50. *Scott v. Robertson*, 583 P.2d 188, 191–92 (Alaska 1978).

51. This analysis focuses on the assault charge; there would also be preclusive effect from the DUI charge because it also is a serious criminal offense. Anderson has admitted in this action the facts that constitute the essential elements of the DUI charge.

52. *Scott*, 583 P.2d at 191.

53. *Id.*

54. *Id.* at 192 (citation omitted).

55. *Id.*

56. *Id.* at 192.

57. AS 11.81.900(3).

58. AS 09.17.020(b)(2).

also that such risk is substantially greater than that which is necessary to make his conduct negligent.[59]

Thus, both the Restatement and our criminal statute view recklessness as unreasonably disregarding a known risk of substantial physical harm to another. The two standards are substantially similar; the assault standard is at least as broad as the punitive damages standard. The reference to conscious action may indicate a level of culpability even higher than is present in the somewhat passive state of indifference. Anderson is therefore estopped from denying recklessness under AS 09.17.020(b).

■■■ That Anderson is estopped from denying recklessness under AS 09.17.020(b) means that Lamb is eligible for punitive damages rather than that punitive damages must be imposed. The multifactor inquiry under AS 09.17.020(c) as to the amount of punitive damages that may be awarded[60] remains open and the superior court must instruct the jury on the factors identified in that statute. Because AS 09.17.020(b) provides that the jury "may" award punitive damages under AS 09.17.020(c) once reckless indifference has been proved, the inquiry under AS 09.17.020(c) permits, but does not require, an award of punitive damages.[61]

## V. CONCLUSION

Under Alaska law, a defendant in a civil case who has been convicted after pleading no contest is collaterally estopped from relitigating the essential elements of the offense. Anderson's criminal conviction for assault is thus conclusive evidence of his recklessness under AS 09.17.020(b). It was for these reasons that we REVERSED the judgment of the superior court and REMANDED with instructions in our order of December 22, 2005.

---

59. *Hayes v. Xerox Corp.*, 718 P.2d 929, 935 (Alaska 1986) (quoting Restatement (Second) of Torts § 500 (1964)).

60. Alaska Statute 09.17.020(c) provides:

At the separate proceeding to determine the amount of punitive damages to be awarded, the fact finder may consider

(1) the likelihood at the time of the conduct that serious harm would arise from the defendant's conduct;

(2) the degree of the defendant's awareness of the likelihood described in (1) of this subsection;

(3) the amount of financial gain the defendant gained or expected to gain as a result of the defendant's conduct;

(4) the duration of the conduct and any intentional concealment of the conduct;

(5) the attitude and conduct of the defendant upon discovery of the conduct;

(6) the financial condition of the defendant; and

(7) the total deterrence of other damages and punishment imposed on the defendant as a result of the conduct, including compensatory and punitive damages awards to persons in situations similar to those of the plaintiff and the severity of the criminal penalties to which the defendant has been or may be subjected.

61. As our original order following oral argument stated:

4. Anderson is collaterally estopped by his assault conviction from contesting recklessness as defined in AS 11.41.210(a)(2). The assault conviction establishes that Anderson "recklessly cause[d] serious physical injury to another person." AS 11.41.210(a)(2). Recklessness for the purposes of assault is defined to include being "aware of and consciously disregard[ing] a substantial and unjustifiable risk that the result will occur or the circumstance will exist." AS 11.81.900(3). This standard is at least as broad as the standard for punitive damages, which requires a showing that the tortfeasor "evidenced reckless indifference to the interest of another person." AS 09.17.020(b).

5. Anderson is therefore estopped from denying recklessness under AS 09.17.020(b). That Anderson is estopped from denying recklessness under AS 09.17.020(b) means that Lamb is eligible for punitive damages rather than that punitive damages must be imposed. The inquiry under AS 09.17.020(c) remains open and the superior court must instruct the jury on the factors identified in that statute. Because AS 09.17.020(b) provides that the jury "may" award punitive damages under AS 09.17.020(c) once reckless indifference has been proved, the court should also instruct the jury that the inquiry under AS 09.17.020(c) permits, but does not require, an award of punitive damages.