NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>*. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

FRED MICHAEL ESGUERRA JR.,

                Petitioner,

      v.

STATE OF ALASKA,

                Respondent.

Court of Appeals No. A-13819
Trial Court No. 3AN-19-04854 CR

O P I N I O N

No. 2754 — August 18, 2023

Petition for Review from the Superior Court, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Melissa H. Goldstein and Julia Bedell, Assistant Public Defenders, and Samantha Cherot, Public Defender, Anchorage, for the Petitioner. Kenneth M. Rosenstein, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Respondent.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD, writing for the Court.
Judge HARBISON, concurring.

In 2002, Fred Michael Esguerra Jr. was convicted of two counts of first-degree sexual abuse of a minor and one count of attempted first-degree sexual abuse of a minor.[1] Esguerra was later released on probation.

In October 2018, the State filed a petition to revoke Esguerra's probation on three separate grounds. Esguerra testified at the probation revocation hearing and denied a number of the State's factual claims. After Esguerra testified, the State, believing that Esguerra had lied on the witness stand, added a fourth violation to the petition: that Esguerra had just committed perjury. The court found that the State had proven two of the claimed probation violations by a preponderance of the evidence, but found that the State had not proven the other two, including the allegation of perjury.

Several months later, the State indicted Esguerra on eleven counts of perjury based on his testimony at the probation revocation hearing. Esguerra moved to dismiss the indictment, arguing that because the State had failed to prove the perjury allegation in the probation revocation proceeding, it was barred from pursuing that allegation in a subsequent criminal proceeding by the doctrines of res judicata (*i.e.*, claim preclusion) and collateral estoppel (*i.e.*, issue preclusion). The superior court denied Esguerra's request, and Esguerra petitioned this Court for review, which we granted.

We now affirm the superior court's denial of Esguerra's motion to dismiss the indictment.

*The State's prosecution of Esguerra is not precluded by res judicata or collateral estoppel*

This petition requires us to address whether the doctrines of res judicata and collateral estoppel preclude the State from pursuing criminal charges when the State

---

[1]    AS 11.41.434(a)(1) and AS 11.41.434(a)(1) & AS 11.31.100(a), respectively.

failed to prove those same charges in a probation revocation proceeding alleging that the defendant engaged in new criminal conduct.

The doctrine of res judicata, also called claim preclusion, "prevents a party from suing on a claim which has been previously litigated to a final judgment by that party . . . and precludes the assertion by such parties of any legal theory, cause of action, or defense which *could have been asserted in that action*."[2] This doctrine does not apply here because the State could not pursue its current "cause of action" — *i.e.*, its criminal prosecution of Esguerra — through a petition to revoke probation.

But the doctrine of collateral estoppel, also called issue preclusion, presents a more difficult question. Collateral estoppel "bars the relitigation of issues actually determined in [earlier] proceedings."[3] It requires four elements:

> (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved by the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment.[4]

We find persuasive the California Supreme Court's analysis of this issue in *Lucido v. Superior Court*.[5] The California Supreme Court acknowledged that the technical elements of collateral estoppel will often be met when the government seeks to file criminal charges based on alleged probation violations that it previously failed to

---

  [2]   *McElroy v. Kennedy*, 74 P.3d 903, 906 (Alaska 2003) (alteration in original) (emphasis added) (quoting *Dixon v. Pouncy*, 979 P.2d 520, 523 (Alaska 1999)).

  [3]   *Sykes v. Lawless*, 474 P.3d 636, 643 (Alaska 2020) (alteration in original) (quoting *Latham v. Palin*, 251 P.3d 341, 344 (Alaska 2011)).

  [4]   *Id.* (quoting *Latham*, 251 P.3d at 344).

  [5]   *Lucido v. Superior Court*, 795 P.2d 1223 (Cal. 1990).

prove, but the court went on to hold that the public policies underlying the doctrine of collateral estoppel would not be served by applying it to this context.

*Lucido* explained that there are three core public policies underlying collateral estoppel: preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation.[6]

With respect to the integrity of the judicial system, the court acknowledged that "[p]ublic confidence in the integrity of the judicial system is threatened whenever two tribunals render inconsistent verdicts."[7] But the court concluded that eliminating this potential inconsistency by displacing full determination of factual issues in criminal trials would have an even greater effect on public confidence in the judiciary.[8]

As the *Lucido* court explained, "Probation revocation hearings and criminal trials serve different public interests."[9] The role of the judge in a probation revocation proceeding is "not to determine whether the probationer is guilty or innocent of a crime," but only "whether a violation of the terms of probation has occurred and, if so, whether it would be appropriate to allow the probationer to continue to retain [their] conditional liberty."[10] The court further reasoned:

> Because the limited nature of this inquiry may not involve or invoke presentation of all evidence bearing on the underlying factual allegations, the [government's] failure to satisfy the lower burden of proof at the revocation hearing

---

[6]   *Id.* at 1227.

[7]   *Id.* at 1229.

[8]   *Id.*

[9]   *Id.*

[10]   *Id.* at 1230.

does not necessarily amount to an acquittal or demonstrate an inability to meet the higher criminal standard of proof.[11]

In light of these differing purposes, the *Lucido* court concluded that "[p]reemption of trial of a new charge by a revocation decision designed to perform a wholly independent social and legal task would undermine the function of the criminal trial process as the intended forum for ultimate determinations as to guilt or innocence of newly alleged crimes."[12]

With respect to the promotion of judicial economy, the court acknowledged that applying collateral estoppel would potentially promote judicial economy in two ways: "it would reduce the number of court proceedings by precluding prosecution of issues determined adversely to the [government] at the revocation hearing[;]" and "by increasing the already high stakes of the revocation hearing, it might encourage the [government] to prosecute first."[13] But the court found that these concerns were insufficient to justify applying collateral estoppel, writing that "[w]hatever the efficiencies of applying collateral estoppel in this case, they pale before the importance of preserving the criminal trial process as the exclusive forum for determining guilt or innocence as to new crimes."[14]

With respect to the protection of litigants from harassment by vexatious litigation, the court explained that although application of collateral estoppel would prevent repetitive litigation, "[t]he essence of vexatiousness . . . is not mere repetition" but rather "harassment through baseless or unjustified litigation."[15] As the court

---

[11] *Id.*

[12] *Id.* at 1230-31.

[13] *Id.* at 1232.

[14] *Id.*

[15] *Id.*

explained, it is generally "neither vexatious nor unfair for a probationer to be subjected to both a revocation hearing and a criminal trial" because "[t]he public has a legitimate expectation that a person once found guilty of a crime may both be held to the terms of [their] probation and (if deemed appropriate by the prosecution) tried anew for any offenses alleged to have been committed during the probationary period."[16] The fact that the government failed to prevail at the revocation hearing "does not alone transform the otherwise permissible subsequent trial into harassment."[17]

For all these reasons, the California Supreme Court concluded that "[a]pplying collateral estoppel would unduly expand the designated function of the revocation hearing and undermine the public interest in determining criminal guilt and innocence at criminal trials."[18]

Much like California, Alaska courts have repeatedly "looked to the public policies underlying the doctrine [of collateral estoppel] before concluding that collateral estoppel should be applied in a particular setting."[19] And we agree with the California

---

[16]   *Id.*

[17]   *Id.*

[18]   *Id.* at 1233.

[19]   *Id.* at 1226; *see, e.g.*, *Burcina v. Ketchikan*, 902 P.2d 817, 822 (Alaska 1995) ("We hold, based on public policy grounds, that a civil plaintiff is collaterally estopped from relitigating any element of a criminal charge to which [they have] pled *nolo contendere*."); *Lamb v. Anderson*, 147 P.3d 736, 742 (Alaska 2006) (applying the holding in *Burcina* to civil defendants); *Jones v. State*, 215 P.3d 1091, 1097, 1100 (Alaska App. 2009) (explaining that *Burcina*, *Lamb*, and similar cases were "based on policy considerations," and noting that whether collateral estoppel applies involves "issues regarding the policies underlying the doctrine of issue preclusion"); *see also Bearden v. State Farm Fire & Cas. Co.*, 299 P.3d 705, 713-15 (Alaska 2013) (addressing, and ultimately rejecting, appellant's policy arguments that application of collateral estoppel to his case was manifestly unfair); *May v. State, Com. Fisheries Entry Comm'n*, 168 P.3d 873, 883 (Alaska 2007) (declining to apply collateral estoppel against a state agency because it "would violate the flexibility that courts have traditionally given agencies to correct errors in order to properly implement policy"); *State v. United Cook Inlet Drift Ass'n*, 895 P.2d 947, 952 (Alaska

Supreme Court that those policies support refusing to apply collateral estoppel to the situation presented here.

We also note that at the time *Lucido* was decided in 1990, courts were roughly split on this question. *Lucido* cited five jurisdictions (Arizona, Florida, New York, Washington, and the Sixth Circuit) holding that collateral estoppel does not apply and three jurisdictions (Illinois, Oregon, and Texas) holding that it does.[20] But *Lucido* now firmly states the majority rule. We count at least ten additional states (Connecticut, Georgia, Maine, Massachusetts, Michigan, Mississippi, Rhode Island, Pennsylvania, Vermont, and Wisconsin) holding that collateral estoppel does not apply.[21] And one of the three states cited in *Lucido* as holding that collateral estoppel does apply (Texas) recently overturned its prior case law and joined the majority view.[22]

---

1995) (holding that "sound policy justifications support the adoption by this court of a limited exception to the application of collateral estoppel against the State on 'unmixed questions of law'"); *Holmberg v. State, Div. of Risk Mgmt.*, 796 P.2d 823, 824-27 (Alaska 1990) (addressing whether, on policy grounds, determinations of the Public Employees Retirement Board should generally be given preclusive effect, and only then addressing whether the conditions of collateral estoppel were met in the specific case at issue); *Palfy v. First Bank of Valdez*, 471 P.2d 379, 384 (Alaska 1970) (explaining that "the policy of finality underlying res judicata and collateral estoppel must be tempered by our paramount concern that a party be afforded [their] day in court").

[20] *Lucido*, 795 P.2d at 1228 (collecting cases).

[21] *State v. McDowell*, 699 A.2d 987, 991 (Conn. 1997); *Teague v. State*, 312 S.E.2d 818, 820 (Ga. App. 1983) (*Teague* was issued before *Lucido*, but is not cited in that case); *State v. Reed*, 686 A.2d 1067, 1069 (Me. 1996); *Krochta v. Commonwealth*, 711 N.E.2d 142, 144-45 (Mass. 1999); *People v. Johnson*, 477 N.W.2d 426, 429 (Mich. App. 1991); *State v. Oliver*, 856 So. 2d 328, 332 (Miss. 2003); *State v. Gautier*, 871 A.2d 347, 359 (R.I. 2005); *Commonwealth v. Cosgrove*, 629 A.2d 1007, 1011 (Pa. Super. 1993); *State v. Brunet*, 806 A.2d 1007, 1010-13 (Vt. 2002); *State v. Terry*, 620 N.W.2d 217, 222 (Wis. App. 2000).

[22] *State v. Waters*, 560 S.W.3d 651 (Tex. Crim. App. 2018) (overruling *Ex parte Tarver*, 725 S.W.2d 195 (Tex. Crim. App. 1986)).

For all the reasons stated above, we agree with the vast majority of courts that have decided this issue that collateral estoppel does not apply to the situation at issue here.

But although we conclude, after balancing all of the relevant policy considerations, that collateral estoppel should not be applied in this context, we take this time to remind the State that public confidence in the integrity of the judicial system is indeed undermined whenever two tribunals render inconsistent verdicts.[23] In his concurrence in *McCracken v. Corey*, Justice Rabinowitz recommended that when the government intends to seek revocation of probation based on conduct constituting a crime, it should first determine whether it also intends to bring criminal charges. If it does not, the probation revocation proceeding should proceed; but if it does, the revocation proceeding should be suspended until after the outcome of the criminal prosecution.[24] As the concurrence to this case correctly notes, had the State adopted that approach here, there would have been no risk of inconsistent verdicts, and thus no risk of undermining public confidence in the integrity of our judicial system.

*Conclusion*

We AFFIRM the superior court's ruling denying Esguerra's motion to dismiss and REMAND this case for further proceedings.

---

[23] *See Lucido*, 795 P.2d at 1229.

[24] *McCracken v. Corey*, 612 P.2d 990, 1000-01 (Alaska 1980) (Rabinowitz, J., concurring).

Judge HARBISON, concurring.

I agree with both the reasoning and the conclusion of the majority opinion in this case. However, I write separately to emphasize a legal premise that flows from today's opinion and previous case law — that when a defendant is faced with a probation revocation and a criminal charge based on the same alleged conduct, the defendant is entitled to have probation revocation proceedings postponed until after the underlying criminal charges are resolved.

The underpinnings of this point of law were first identified by the Alaska Supreme Court in a concurring opinion in *State v. DeVoe*.[1] In that opinion, Justice Rabinowitz explained:

> When the probation revocation proceeding is based upon alleged criminal conduct as to which the probationer's innocence or guilt remains to be adjudicated in a criminal proceeding, there is the possibility of dilution of the probationer's privilege against self-incrimination, since at the criminal trial the prosecutor may be able to use evidence which the probationer presented in the probation revocation proceeding. Thus, in many situations ". . . the defendant is confronted with the choice of either producing evidence at the revocation hearing and thus providing the state with incriminating evidence, or not producing evidence and thus foregoing a valuable defense." In my view this is a problem of some significance which calls for a solution.[2]

Several years later, in *McCracken v. Corey*, the supreme court had occasion to offer a solution to the problem identified by the *DeVoe* concurrence. In *McCracken*, the defendant faced a parole revocation and a criminal charge based on the same alleged conduct.[3] The supreme court noted that holding the revocation hearing

---

[1] *State v. DeVoe*, 560 P.2d 12, 15-17 (Alaska 1977) (Rabinowitz, J., concurring).

[2] *Id.* at 16 (Rabinowitz, J., concurring) (citation omitted).

[3] *McCracken v. Corey*, 612 P.2d 990, 991 (Alaska 1980).

before the criminal trial could "disrupt[] the maintenance of a 'fair state-individual balance' at the criminal trial, where the burden of proving the guilt of the defendant must be shouldered entirely by the state."[4] In addition, forcing the defendant to choose between their right to defend themself at the parole revocation hearing and their right to remain silent with respect to their criminal trial, while possibly not rising to the level of "compulsion" prohibited by the Fifth Amendment, posed an unfair dilemma which "runs counter to our historic aversion to cruelty reflected in the privilege against self-incrimination."[5]

The supreme court thus held that the "most desirable" method of resolving the problems of concurrent criminal and probation revocation proceedings is for the revocation proceedings "not even to be initiated" until after the disposition of the related criminal proceedings.[6] But the supreme court acknowledged that the State has an interest in initiating prompt revocation proceedings upon the occurrence of a criminal offense, and it ultimately stopped short of requiring a stay of the revocation proceeding in every case.[7] The court instead held that, when a revocation hearing is conducted prior to a criminal trial for the same conduct, the State may not introduce any evidence or testimony that had been presented by the defendant at the revocation hearing in the subsequent criminal proceeding, nor may it introduce the fruits of any such evidence or testimony.[8]

---

[4]   *Id.* at 996 (citation omitted).

[5]   *Id.* (citation omitted).

[6]   *Id.* at 997 (citation omitted).

[7]   *See Armstrong v. Tanaka*, 228 P.3d 79, 83 (Alaska 2010) (noting that, in *McCracken*, the supreme court "declined to require a stay of the revocation hearing").

[8]   *McCracken*, 612 P.2d at 998.

Just as the supreme court's *McCracken* decision did not announce a blanket prohibition on conducting a probation revocation hearing prior to a criminal trial, today's opinion likewise does not prevent courts from proceeding in such a manner. However, today's opinion relies heavily on a number of policy considerations which support the view, expressed in *McCracken*, that revocation proceedings should be conducted after the disposition of any criminal charges alleging the same conduct.

As noted by today's majority opinion, such an approach reduces the risk of inconsistent verdicts and accordingly does much to uphold the integrity of the judicial system. Furthermore, if the court delays the probation revocation adjudication hearing until after the criminal charges are resolved, this preserves the criminal trial process as the forum for adjudicating crimes. This also promotes judicial economy because the allegation of new criminal conduct could be resolved conclusively by a jury's guilty verdict, making it unnecessary for the State to present the evidence of this conduct a second time during the revocation proceedings. Lastly, this approach would almost certainly result in more considered charging decisions and more careful presentation of evidence in probation revocation matters — in contrast to the impromptu, and ultimately unsuccessful, charging decision that was made in this case.

Here, the prosecutor added a new count to the petition to revoke Esguerra's probation, alleging that Esguerra had committed perjury, after the evidence had been presented in the case, during closing arguments. Under these circumstances, Esguerra certainly would have been entitled to have the court postpone adjudication of the new allegation until a later date, including until after the disposition of any underlying criminal charge. But the defense attorney did not ask to postpone the adjudication of the new allegation. Instead, the attorney acquiesced in submitting the matter to the judge for decision based on the evidence that had already been presented — a tactic which proved to be advantageous to Esguerra, as was shown by the judge's finding that the evidence was not sufficient to support the perjury allegation.

The rationale of today's decision, together with prior Alaska case law on this subject, lead to the conclusion that the denial of a defendant's request to continue a probation revocation hearing until the related criminal proceeding is resolved will almost always be an abuse of the court's discretion. Thus, a probation revocation hearing will rarely, if ever, be adjudicated prior to the disposition of the underlying criminal charge, and the legal dilemma resolved by the majority opinion today is unlikely to arise in future cases.