William HOWARTH, Sr., Appellant,

v.

STATE of Alaska, PUBLIC DEFENDER AGENCY and Edward J. Welch, Appellees.

No. S–4333.

Supreme Court of Alaska.

Nov. 8, 1996.

that Welch had ineffectively counseled Howarth by failing to discuss with Howarth certain laboratory and medical evidence.

When Howarth was permitted to withdraw his plea of nolo contendere, he remained under indictment for first degree sexual assault. Pending trial, Howarth pled nolo contendere to a reduced charge of second degree sexual assault pursuant to a plea agreement with the State. Under the plea agreement, the State would seek no more than a six-year sentence. Howarth was released from custody, since he had already served nearly seven years. On June 24, 1988, Howarth was sentenced to a prison term of four years on his nolo contendere plea to the charge of sexual assault in the second degree. He was given credit for time served.

Subsequently Howarth sued Welch and the Public Defender Agency for negligence in connection with his representation. The defendants answered and moved for summary judgment. After Howarth filed his opposition to the motion for summary judgment the trial court granted the motion. Howarth appeals.

The superior court issued a written opinion with its order granting summary judgment. The court concluded that the proximate cause of Howarth's damage—his time in jail—was his plea of nolo contendere to the charge of sexual assault in the second degree of May 4, 1988. The superior court also found that Howarth was precluded from contesting his guilt of sexual assault in the second degree which had been established by that plea. The court also found "as a matter of public policy the courts of this state should not entertain [legal malpractice] actions brought by one who had plead no contest to a serious crime and a conviction entered thereon."

## II. DISCUSSION

### A. Contentions of the Parties

On appeal Howarth raises three arguments: (1) genuine issues of material fact exist concerning Howarth's guilt and the

William J. Donohue, William J. Donohue, P.C., Anchorage, and C.R. Kennelly, Stepovich, Kennelly & Stepovich, P.C., Anchorage, for Appellant.

Venable Vermont, Jr., Assistant Attorney General, Anchorage, and Charles E. Cole, Attorney General, Juneau, for Appellees.

Before RABINOWITZ, C.J., and MATTHEWS and COMPTON, JJ.*

## OPINION

MATTHEWS, Justice.

William Howarth appeals from the superior court's grant of summary judgment against him in a malpractice suit which he brought against his former attorney, Edward Welch, and the Public Defender Agency.

## I. FACTS AND PROCEEDINGS

Howarth was arrested and charged with the first degree sexual assault of L.M. on May 30, 1981. Welch, an employee of the Public Defender Agency, was assigned to represent him. Howarth entered a plea of nolo contendere to the crime charged and was sentenced to a prison term of ten years on September 9, 1981. Howarth was still serving this sentence when, on March 3, 1988, the superior court granted his motion permitting him to withdraw his plea. The superior court based its order on a finding

* Subsequent to the oral argument of this case Justices Burke and Moore retired. They did not participate in this decision.

negligence of Welch; (2) the nolo contendere plea entered by Howarth in 1988 to the charge of sexual assault in the second degree was not the proximate cause of his damages; and (3) the nolo contendere plea to the charge of sexual assault in the second degree was not an admission of guilt binding on Howarth in this case.

In response the State argues: (1) the trial court correctly found Howarth to be estopped from contesting that he was guilty of second degree sexual assault; (2) the conviction of second degree sexual assault was the proximate cause of Howarth's damages; and (3) public policy considerations preclude a convicted criminal from shifting the loss occasioned by the criminal's sentence to another person or entity who might otherwise be liable.

### B. *Summary*

We generally agree with the State's contentions. Summarized, our rationale is as follows:

1. Howarth stands convicted of second degree sexual assault.

2. Howarth's acts which gave rise to this conviction are, as a matter of law, a legal cause of the seven years he has served in prison.

3. Howarth is barred by the doctrine of collateral estoppel from denying that he committed the acts which are the constituent elements of his second degree sexual assault conviction.

4. One whose incarceration results from his own intentional acts may not receive a damage award for the incarceration from another whose negligence also caused or contributed to the incarceration.

5. Since Howarth's act of second degree sexual assault was a cause of his incarcera-

tion and he is precluded from denying that he committed the act, he may not recover.

We proceed to discuss these points.

### C. *The Conviction*

Howarth stands convicted of the crime of sexual assault in the second degree, a violation of AS 11.41.420(a).[1] The elements of this crime are an intentional sexual contact with another person coerced by threat of death or physical injury. Sexual assault in the second degree is a class B felony. AS 11.41.420(b). A person convicted of a class B felony may be sentenced to a term of imprisonment of not more than ten years. The presumptive term for a defendant such as Howarth who has a prior felony conviction is four years. AS 12.55.125(d)(1). The presumptive term may be decreased to no prison time at all for factors in mitigation or increased to the maximum term of ten years for factors in aggravation. AS 12.55.155. Two factors in aggravation[2] and one in mitigation[3] were potentially applicable to Howarth's crime.

### D. *Howarth's Act of Intentional Sexual Assault was a Legal Cause of His Incarceration*

In reviewing decisions in which summary judgment has been granted we take that view of the facts most favorable to the appellant in order to determine whether under the facts as so construed the appellee was entitled to judgment. *Hawks v. State, Dep't of Public Safety,* 908 P.2d 1013, 1015 (Alaska 1995). Accordingly, for purposes of analysis we assume (1) that Howarth was negligently represented by Welch and (2) that this negligence was a cause of Howarth receiving and serving a seven-year sentence rather than a four-year sentence.[4] The ques-

---

1. AS 11.41.420(a) provided in 1981:

   (a) A person commits the crime of sexual assault in the second degree if he coerces another person to engage in sexual contact by the express or implied threat of imminent death, imminent physical injury, or imminent kidnapping to be inflicted on anyone or by causing physical injury to any person, regardless of whether the victim resists.

2. These were physical injury to the victim and prior history of repeated instances of assaultive behavior. AS 12.55.155(c)(1) and (8).

3. This was that the prior felony was less serious than the present offense. AS 12.55.155(d)(8) (repealed 1982).

4. Both assumptions gloss over a number of unresolved issues. For example, to speak only of the second assumption, if Howarth's attorney had

tion is whether the State is liable for this additional period of three years.

We answer this question in the negative. There were two causes for Howarth's service of the additional three-year period. One was Welch's assumed negligence. The second was Howarth's act of intentional non-consensual sexual contact with his victim—his crime of second degree sexual assault. That this intentional criminal conduct was, as a matter of law, a legal cause of the entire seven-year period of imprisonment becomes clear upon review of the principles of legal causation.

■ As we recently explained in *Vincent by Staton v. Fairbanks Memorial Hospital*, 862 P.2d 847, 851 (Alaska 1993), legal cause encompasses two concepts. The first is actual causation, or "but for" cause: "The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event if the event would have occurred without it." *Id.* (quoting W. Page Keeton et al., *Prosser and Keeton on Torts* § 41, at 263 (5th ed. 1984)). The second element of legal cause is founded in legal policy. It asks "whether the conduct has been so significant and important a cause that the defendant should be legally responsible." *Id.* (quoting *Prosser and Keeton on Torts* § 42, at 273). We also used another form of expression for the legal policy element in *Vincent:*

> If the force [the defendant] set in motion, has become, so to speak, merged in the general forces that surround us, [or has] "exhausted itself" like a spent cartridge, it can be followed no further. Any later combination of circumstances to which it may contribute in some degree is too remote from the defendant to be chargeable to him.

*Id.* at 851 n. 8 (citing Jeremiah Smith, *Legal Cause in Actions of Tort*, 25 Harv. L.Rev. 103, 112 (1911)).

not been negligent would Howarth have been convicted of first degree sexual assault? If the answer to this is affirmative then the attorney's negligence caused no damage. If Howarth's attorney had not been negligent would Howarth have been convicted of second degree sexual

Applying these tests to this case it is evident that Howarth would not have been imprisoned for seven years had he not sexually assaulted L.M. Thus the "but for" element of legal cause is satisfied. His sexual assault of L.M. was also a significant and important cause of his full imprisonment. The force he set in motion with his sexual assault in no sense became exhausted or remote after he served the first four years of his sentence. The maximum lawful sentence he could have received for his crime was ten years and the seven years he served was well within this limit.

E.  *Collateral Estoppel Prohibits Howarth From Denying that He Committed the Acts Which Are the Essential Elements of Second Degree Sexual Assault*

■ Howarth is precluded by his plea of nolo contendere to second degree sexual assault from denying the conduct which constitutes this crime. We held in *Burcina v. City of Ketchikan*, 902 P.2d 817, 822 (Alaska 1995), "based on public policy grounds, that a civil plaintiff is collaterally estopped from relitigating any element of a criminal charge to which he has pled nolo contendere."

Howarth argues that the rule of collateral estoppel does not apply because second degree sexual assault is not a "serious offense" within the meaning of our decision in the case of *Scott v. Robertson*, 583 P.2d 188 (Alaska 1978), because Howarth lacked the motive to defend against this charge. In *Scott* this court held that prior criminal convictions can be admitted and given collateral estoppel effect if certain conditions are met. The only condition which concerns us here is that the prior conviction must be "for a serious criminal offense. . . ." *Id.* at 191.

■ In *Scott* we held that the misdemeanor offense of operating a motor vehicle while under the influence of intoxicating liquor (OMVI) was a serious offense, even though the maximum term of imprisonment which

assault in 1981 and received a four-year sentence? Although the four-year retrospective sentence Howarth received in 1988 may be some evidence on this point, it would not be conclusive given the different context in which that sentence was issued.

could be imposed was one year. *Id.* at 192. We noted that our conclusion that such an offense was a serious one for collateral estoppel purposes differed from the federal approach which would require that the offense be punishable by imprisonment *in excess* of one year. *Id.* at 192 n. 20. It follows from *Scott* that any offense which is punishable by imprisonment in excess of one year and at least some offenses which are punishable by imprisonment of one year or less are serious offenses. Since felonies are by definition crimes for which a sentence of imprisonment for a term of more than one year is authorized, AS 11.81.900(b)(20), it is right (and not a little redundant) to conclude that all felonies are serious offenses.

Our opinion in *Scott,* 583 P.2d at 192 n. 16, cited *McCormick on Evidence* § 318, at 739–40 (Edward W. Cleary ed., 2d ed. 1972). McCormick's discussion of this issue makes it clear that felonies are always serious offenses; the debate is whether certain misdemeanors are also serious offenses:

> A number of courts have limited this rule [giving collateral estoppel effect to prior criminal convictions] to convictions for serious offenses, reasoning that convictions for *misdemeanors* do not represent sufficiently reliable determinations to justify dispensing with the hearsay objections. . . .
>
> The trend in this area is towards broader admissibility. The Model Code of Evidence provides for the admissibility of a judgment "adjudging a person guilty of a crime or a misdemeanor" to prove the facts recited therein "and every fact essential to sustain the judgment." The Uniform Rules adopt this view with the important limitation to convictions for a felony.

*Id.* § 318, at 740–41 (emphasis added) (footnotes omitted).

In *Scott,* this court laid down as a general rule that "any offense punishable by impris-

onment should be considered to be a serious offense." 583 P.2d at 192. We footnoted this statement with the following observation: "The court may consider arguments that in a particular offense, although technically subject to incarceration, the likelihood of such punishment is so remote as not to justify its being considered as a serious offense for this purpose." *Id.* at 192 n. 17. Did this exception mean that felonies should not be considered serious offenses where the defendant knew because of a plea bargain favorable to the defendant that he would serve no time in jail? In the context of the actual holding of *Scott*—that an OMVI misdemeanor was a serious offense—and the debate among the authorities referred to in *Scott*—whether only felonies or felonies and some misdemeanors could be considered serious offenses—the conclusion that this exception might apply to felonies seems untenable.[5]

Plea bargaining between the prosecution and defense counsel takes place. Sometimes plea bargains result in a sentence of no additional incarceration for a felony conviction.[6] One consequence of accepting Howarth's argument would be that collateral estoppel would not be applied to felony convictions where a plea bargain has assured the defendant that he will serve no additional time in jail.

Such a result would be undesirable as a matter of public policy. The consequences of any felony conviction are serious. There is great harm to one's reputation. Further, a felony conviction, especially, as in Howarth's case, a second felony conviction, would be of great consequence should the defendant be convicted of a subsequent felony. *See* AS 12.55.125 (providing for presumptive sentences for all second felony offenders convicted of class A, B or C felonies and enhanced presumptive sentences for those who have been twice convicted). In our view a defendant convicted of a felony—including a defendant who goes free after making a salubrious

---

5. None of the authorities mentioned in *Scott* as employing the serious offense requirement as a prerequisite to admission of a criminal conviction for collateral estoppel purposes hold, or remotely suggest, that a felony is not a serious offense for the purposes of this doctrine.

6. The record shows that Howarth was the recipient of such an agreement with respect to an earlier and unrelated felony conviction for assault with a dangerous weapon. He was convicted on a plea of nolo contendere and received a deferred imposition of sentence with probation but no time to be served on March 30, 1978.

plea bargain—should not be allowed to claim in court in subsequent litigation that the elements essential to his conviction did not exist. Allowing such a claim trivializes both the conviction and the criminal process.[7]

### F. One Whose Intentional Criminal Acts Result in Incarceration Cannot Recover Damages Associated with that Incarceration from Others Whose Conduct May Also Have Caused or Contributed to the Incarceration

█ There are four Alaska cases which stand for this principle. The earliest case is *Adkinson v. Rossi Arms Co.*, 659 P.2d 1236 (Alaska 1983). Adkinson intentionally pointed a shotgun at another person; the gun discharged, killing the other person. Adkinson was convicted of manslaughter and sentenced to serve a ten-year term of incarceration. Adkinson and his wife sued the manufacturer of the gun, claiming that a defect had caused it to discharge; he sought damages resulting from his incarceration. His claim was dismissed by the trial court on summary judgment. On appeal we affirmed in a discussion which implicitly assumed for the purpose of analysis that one cause of the victim's death was a defect in the shotgun. We observed that Adkinson had committed "intentional criminal conduct," *id.* at 1239, noting that the nature of such conduct was intentionally pointing the gun at the victim, *id.* at 1239 n. 8, though not necessarily with "specific intent to cause injury." *Id.* at 1238 n. 5. One basis for our affirmance was that public policy prohibited shifting responsibility, even in part, flowing from intentional criminal conduct:

> The jury which heard James Adkinson's criminal case concluded beyond a reasonable doubt that Adkinson was guilty of manslaughter on the basis of his own intentional conduct. The responsibility for any resultant "personal losses" rest[s] solely with the Adkinsons.

*Id.* at 1240. *Adkinson* is particularly instructive because, as noted above, Adkinson's intentional criminal act was the wrongful pointing of the shotgun at the victim.[8] Even if the gun had not discharged, that was a crime. Conviction of such a crime could have resulted in a short prison sentence. Because the gun discharged Adkinson's crime became manslaughter and his prison sentence was a term of ten years. Nevertheless, Adkinson's intentional criminal conduct, the unlawful pointing, precluded his recovery for the enhancement of his sentence caused by the assumed defect in the gun.

The second case, *Lord v. Fogcutter Bar*, 813 P.2d 660 (Alaska 1991), arose out of the following facts. Lord had more than fourteen drinks at the Fogcutter Bar. He left the bar with a woman whom he subsequently kidnapped and raped. He received a thirty-year sentence for these acts. *Id.* at 661. Lord sued the Fogcutter Bar for the damages he suffered as a result of his imprisonment, claiming that the Fogcutter was negligent in serving drinks to him when he was obviously intoxicated. *Id.* at 662. As in *Adkinson*, we assumed that the Fogcutter had indeed been negligent, but held that it could not be liable:

> Courts have consistently refused to aid those whose claims are based upon their own illegal acts. 1A C.J.S. *Actions* § 29 (1985); *Snug Harbor Packing Co. v. Schmidt*, 394 P.2d 397, 399 (Alaska 1964); *see also Amato v. United States*, 549 F.Supp. 863, 867 (D.N.J.1982), *aff'd without opinion*, 729 F.2d 1445 (3d Cir.1984) (suspect shot during armed robbery cannot sue police for negligence in failing to apprehend him prior to robbery); *Cole v. Taylor*, 301 N.W.2d 766, 768 (Iowa 1981) (plaintiff prohibited from recovering in tort from her psychiatrist on claim that he negligently failed to prevent her from committing murder).

---

7. *See State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 504 (Mo.App.1985) (permitting one who pled guilty based on a plea bargain and received a sentence which was shorter than prior time served to subsequently deny his guilt in civil litigation would be "against public policy" and "would indeed shock the public conscience, engender disrespect for courts and generally dis-

credit the administration of justice") (citation omitted).

8. *See also Adkinson v. State*, 611 P.2d 528, 530, 534 (Alaska), *cert. denied*, 449 U.S. 876, 101 S.Ct. 219, 66 L.Ed.2d 97 (1980).

This principle is grounded in public policy and precludes recovery at the "very threshold of the plaintiff's application for judicial relief." *Barker v. Kallash,* 63 N.Y.2d 19, 479 N.Y.S.2d 201, 203, 206, 468 N.E.2d 39, 41–42, 44 (1984) (fifteen-year-old injured while constructing pipe bomb had no claim for relief against nine-year-old who allegedly sold the firecrackers from which plaintiff's companions extracted gun powder to construct the bomb); *see also Glazier v. Lee,* 171 Mich.App. 216, 429 N.W.2d 857, 860 (1988) (public policy bars claim by plaintiff, who shot and killed his girlfriend and was convicted of voluntary manslaughter, against his psychologist for negligent failure to medicate or hospitalize the plaintiff or to warn the victim of the plaintiff's potential for violence).

Lord's claim is barred for the same reasons we affirmed summary judgment against the plaintiff in *Adkinson v. Rossi Arms Co.,* 659 P.2d 1236 (Alaska 1983). In that case we held that an assailant convicted of manslaughter for shooting and killing his victim with a shotgun had no claim for relief against either the manufacturer or the seller of the shotgun for direct personal losses alleged to have resulted from the shooting. We stated, "[A]llowing a criminal defendant, who has been convicted of an intentional killing, to impose liability on others for the consequences of his own anti-social conduct runs counter to basic values underlying our criminal justice system." *Id.* at 1240.

*Lord,* 813 P.2d at 663.

The third case which recognizes that plaintiffs have no civil remedy for incarceration damages concurrently caused by their criminal conduct and by the negligence of others is *Shaw v. State, Department of Administration,* 861 P.2d 566 (Alaska 1993). Shaw was convicted of four felonies in 1973. Before he was sentenced he fled the state; in 1980 he was apprehended and sentenced for the 1973 convictions. In 1986 these convictions were set aside as "constitutionally defective." Shaw then filed a malpractice claim against the public defender's office. *Id.* at 568. On petitions for review from both parties we addressed, among other issues, the question

whether Shaw's underlying guilt would be an affirmative defense given the fact that all of Shaw's convictions had been set aside. We concluded that actual guilt was an affirmative defense. *Id.* at 573. We discussed *Adkinson* and *Lord,* and compared them to the *Shaw* case as follows:

> *Adkinson* and *Lord* differ from the present case in that both plaintiffs claimed that the defendants were in some way responsible for the criminal acts committed by the plaintiffs, whereas in a malpractice suit the plaintiff is not claiming that the attorney contributed to the plaintiff's criminal act. The cases are the same, however, in that the claimed injury or consequence is the same: The plaintiff claims that were it not for the negligent action of another, he would not have been subjected to imprisonment. As we did in *Adkinson* and *Lord,* we hold that if plaintiffs engaged in the criminal conduct they are accused of, then they alone should bear full responsibility for the consequences of their acts, including imprisonment. Any subsequent negligent conduct by a plaintiff's attorney is superseded by the greater culpability of the plaintiff's criminal conduct.

*Shaw,* 861 P.2d at 572.

The final case is *Burcina v. City of Ketchikan,* 902 P.2d 817 (Alaska 1995). Burcina set fire to a building, pled nolo contendere to arson, and was sentenced to two and one-half years in jail. *Id.* at 819. He sued his psychiatrist and a health care center, claiming that he had received negligent treatment for a mental illness and that the negligent treatment caused him to commit the arson. *Id.* We affirmed the trial court's dismissal of Burcina's case on the authority of *Adkinson, Lord,* and *Shaw:* "[W]e conclude that the public policy principle which precludes a person who has been convicted of a crime from imposing liability on others for the consequences of his or her own antisocial conduct applies here." *Id.* at 821.

## III. CONCLUSION

Howarth sexually assaulted L.M. He is precluded from denying this because he has been convicted of sexually assaulting L.M. and the conviction stands. Because of this

assault he was sentenced. We assume that if his attorney had not been negligent his sentence would have been four years and that because of the attorney's negligence the sentence was seven years. Howarth's intentional criminal conduct is a legal cause of the entire period of his imprisonment. Howarth has no redress against his attorney because Howarth's conduct was intentional and in violation of the criminal law, whereas his attorney's was merely negligent. To use the words of *Shaw,* "subsequent negligent conduct by a plaintiff's attorney is superseded by the greater culpability of the plaintiff's criminal conduct." *Shaw,* 861 P.2d at 572.

For these reasons the judgment is AFFIRMED.

COMPTON, J., dissents.

COMPTON, Justice, dissenting.

I disagree with the court's causation analysis, with its collateral estoppel analysis, and with its holding that a person convicted of a crime cannot recover damages from an attorney whose malpractice contributed to the person's incarceration.

## I. *CAUSATION*

In September 1981[1] Howarth entered a plea of nolo contendere to the charge of sexual assault in the *first* degree, a violation of AS 11.41.410,[2] and received a ten-year presumptive sentence.[3] The superior court later found that Howarth had established ineffective assistance of counsel and granted Howarth's motion to withdraw the plea he entered in 1981. In May 1988 Howarth entered a plea of nolo contendere to the charge of sexual assault in the *second* degree, a violation of AS 11.41.420,[4] for which he received a presumptive sentence of four years.[5]

Howarth remained in prison from May 1981 until May 1988. This seven-year period of incarceration forms the basis for Howarth's claim of damages. The sentence that resulted from Howarth's May 1988 nolo contendere plea was limited to four years. Therefore, this plea could not be the cause of more than four years of Howarth's incarceration. For at least three years of his incarceration, another cause must exist.

The court's decision is premised on the assumption that Howarth's "sentence would have been four years and that because of the attorney's negligence the sentence was seven years." Op. at 1337. This would seem to settle the causation question, but the court does not see it this way. Instead, the court applies the causation test enunciated in *Vincent by Staton v. Fairbanks Memorial Hospital,* 862 P.2d 847 (Alaska 1993), to Howarth's conduct, and holds that "but for"

1. All statutory citations are to the statutes as they existed at the time Howarth allegedly committed a crime.

2. AS 11.41.410 provided in part:
    (a) A person commits the crime of sexual assault in the first degree if,
    (1) being any age, he engages in sexual penetration with another person without consent of that person;
    . . . .
    (b) Sexual assault in the first degree is a class A felony.

3. AS 12.55.125 provided in part:
    . . . .
    (c) A defendant convicted of a class A felony may be sentenced to a definite term of imprisonment of not more than 20 years, and shall be sentenced to the following presumptive terms, subject to adjustment as provided in AS 12.55.155—12.55.175:
    . . . .
    (2) if the offense is a second felony conviction, 10 years . . . .

4. AS 11.41.420 provided:
    (a) A person commits the crime of sexual assault in the second degree if he coerces another person to engage in sexual contact by the express or implied threat of imminent death, imminent physical injury, or imminent kidnapping to be inflicted on anyone or by causing physical injury to any person, regardless of whether the victim resists.
    (b) Sexual assault in the second degree is a class B felony.

5. AS 12.55.125 provided in part:
    . . . .
    (d) A defendant convicted of a class B felony may be sentenced to a definite term of imprisonment of not more than 10 years, and shall be sentenced to the following presumptive terms, subject to adjustment as provided in AS 12.55.155—12.55.175:
    (1) if the offense is a second felony conviction, four years . . . .

Howarth's sexual assault of L.M. he would not have been incarcerated for seven years. Op. at 1333. The court misapplies the test. The *Vincent* test should be applied to *Welch's* actions, for Welch is the defendant in this malpractice claim. *See id.* at 851. If Howarth's three years of additional incarceration would not have occurred without Welch's malpractice, then Welch is liable for damages under the first prong of the *Vincent* test. The second prong of the test, and the question on which liability should turn, is whether Welch's actions were a "substantial factor" in bringing about the harm, i.e., an additional three years of incarceration for a crime Howarth may not have committed.

## II. *COLLATERAL ESTOPPEL*

In *Shaw v. State, Department of Administration*, 861 P.2d 566 (Alaska 1993) (*Shaw II*), the court held that a defendant in a legal malpractice claim "may raise the issue of the plaintiff's actual guilt as an affirmative defense." *Id.* at 572. Thus, the State could argue that even if Howarth's conviction of sexual assault in the second degree was not the proximate cause of his seven years of incarceration, it was Howarth's "actual guilt" of the offense of sexual assault in the first degree which caused the seven years of incarceration. However, the question remains whether the State may use Howarth's plea to, and conviction of, sexual assault in the second degree as evidence of Howarth's "actual guilt" of sexual assault in the first degree.

In *Scott v. Robertson*, 583 P.2d 188 (Alaska 1978), the court articulated the standard for determining whether a criminal conviction is admissible in a civil proceeding as evidence of a material fact on which the conviction rests. Under *Scott*, a criminal conviction can be admitted as evidence in a later civil trial if "(1) the prior conviction is for a serious criminal offense; (2) the defendant in fact had a full and fair hearing; and (3) it is shown that the issue on which the judgment is offered was necessarily decided in the previous trial." *Id.* at 191–92 (footnotes omitted). In *Scott*, the court additionally noted that a particular offense, although technically subject to incarceration, may not justify its being

considered a "serious offense" for the purposes of fulfilling the first *Scott* prerequisite if the likelihood of incarceration is too remote. *Id.* at 192 n. 17. We also observed that

> McCormick explains that a defendant might not make the effort to defend himself fully if the penalty were relatively insignificant. Weinstein also agrees that the possible lack of motivation to defend against minor charges casts doubt on the fairness and reliability of the judgment.

*Id.* at 192 n. 16 (citations omitted).

These cautionary comments are relevant in determining whether Howarth's plea of nolo contendere to the amended charge meets the first *Scott* prerequisite. The court's truism that "all felonies are serious offenses," Op. at 1334, does not resolve the question of whether Howarth lacked motivation to defend against the charge of sexual assault in the second degree. Howarth was offered his freedom from incarceration upon agreeing to plead nolo contendere to the reduced charge of sexual assault in the second degree. On accepting the plea bargain he faced no probation or parole. Under these circumstances, it would be fair to conclude that Howarth lacked the motivation to defend against the charge of sexual assault in the second degree. *Scott*, 583 P.2d at 192; *see also Coney v. Municipality of Anchorage*, 725 P.2d 709, 712 (Alaska 1986) (stating that in applying the *Scott* test, the court must consider the "realities of the litigation").

The court cites policy reasons for not allowing Howarth to claim "elements essential to his conviction did not exist." Op. at 1335. I agree that Howarth should be estopped from arguing he did not commit sexual assault in the second degree. But the policies underlying the finality of plea bargains do not support the State's position that Howarth should also be estopped from litigating his "actual guilt" of sexual assault in the first degree. I would hold that the trial court erred in finding Howarth's nolo contendere plea to sexual assault in the second degree estops him in the present case from litigating his "actual guilt" of sexual assault in the first degree.

## III. POLICY

The practical effect of today's opinion is that a plaintiff may not sue his or her defense attorney for malpractice arising out of criminal representation. The question which has yet to be resolved in the present case is whether Howarth served three years for a crime he did not commit, i.e., sexual assault in the first degree. It is surely not the public policy of this state to penalize persons for crimes they did not commit. If Welch's negligent representation of Howarth was responsible for three years of incarceration for a crime Howarth did not commit, no public policy can justify the result the court reaches.

## IV. CONCLUSION

Genuine issues of material fact exist concerning whether Welch committed malpractice in his representation of Howarth. If Welch did commit malpractice, genuine issues of material fact also exist regarding the proximate cause of Howarth's damages. I would reverse the superior court's grant of summary judgment, and remand the case for further proceedings.