*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KENT BEARDEN, | ) | |
| | ) | Supreme Court No. S-14345 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-10-08579 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE FARM FIRE & | ) | |
| CASUALTY COMPANY, | ) | No. 6775 – April 26, 2013 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Kenneth Jacobus, P.C., Anchorage, for Appellant. Kimberlee A. Colbo, Hughes, Gorski, Seedorf, Odsen & Tervooren, LLC, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Carpeneti, Winfree, and Stowers, Justices. [Maassen and Bolger, Justices, not participating.]

STOWERS, Justice.

## I.    INTRODUCTION

The question in this appeal is whether a defendant who pleads no contest to disorderly conduct in a criminal action can be collaterally estopped from relitigating

the elements of that crime in a related civil declaratory judgment action regarding insurance coverage, thereby precluding coverage.

Kent Bearden pleaded no contest to disorderly conduct for punching Paul Rasmussen during a physical altercation. Rasmussen subsequently filed a civil complaint against Bearden, and Bearden tendered the lawsuit to State Farm Insurance Company to defend and indemnify him under his homeowners insurance policy. State Farm sought declaratory relief and moved for summary judgment on the ground that Bearden's conduct could not be considered an "accident" within the meaning of the insurance policy because his no-contest plea collaterally estopped him from relitigating the issues of mens rea and self-defense. The superior court granted the motion. We affirm.

## II.    FACTS AND PROCEEDINGS

On October 7, 2009, Bearden and Rasmussen were involved in a physical altercation at Denali Car Rental, where Rasmussen was employed. Bearden's wife, Linda, has two children, Lynette and Gary Craig, who together own Denali Car Rental. Bearden did not get along with the Craigs, and Lynette had asked her mother not to bring Bearden on the premises. Bearden also did not get along with Rasmussen; the two had previously been involved in a few nonviolent confrontations.

The October 7 altercation ensued when Bearden and his wife drove to Denali Car Rental to drop off medication for Gary Craig. Upon their arrival, Bearden exited the car to give Lynette Craig the medication, briefly crossing paths with Rasmussen before he got back in the car. Rasmussen, standing in the front doorway while Bearden was still seated, told Bearden he "would like to kick [his] ass." Bearden got out of the car, walked over to Rasmussen, and punched him in the face. Rasmussen then placed Bearden in a headlock, and Bearden continued to try to hit Rasmussen. The confrontation was recorded on the company's security camera and viewed by two police officers who responded to the incident.

Bearden was charged with assault and use of reckless force or violence in violation of Anchorage Municipal Code (AMC) 8.10.010(B).[1]  Bearden ultimately pleaded no contest to "Disorderly Conduct" in violation of AMC 8.30.120(A)(6), which makes it unlawful for any person to "[k]nowingly challenge another to fight, or engage in fighting other than in self-defense."  This crime is punishable by "not more than $2,000.00 or imprisonment for not more than six months, or both such fine and imprisonment."[2]  Bearden was sentenced to 90 days in jail with 85 days suspended and fined $1000 with $500 suspended.

In May 2010 Rasmussen filed a civil complaint against the Beardens for injuries allegedly sustained during the altercation.  The Beardens sought coverage under their State Farm homeowners insurance policy in effect at the time of the altercation.  The policy provides coverage "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence . . . ."  (Emphasis omitted.)  It defines "occurrence" in relevant part as "an accident . . . which results in bodily injury . . . during the policy period."  The policy also expressly excludes certain conduct:

> 1.  Coverage L [Personal Liability] and Coverage M [Medical Payments To Others] do not apply to:
>
>     a.  bodily injury or property damage:
>
>         (1)  which is either expected or intended by the insured; or
>
>         (2)  which is the result of willful and malicious acts of the insured.

---

[1]  *Municipality of Anchorage v. Bearden*, No. 3AN-09-12228 CR (Alaska Dist. Ct., Feb. 2, 2010).

[2]  AMC 8.30.120(C) (2003).

(Emphasis omitted.)

State Farm filed a complaint for declaratory judgment, arguing that the policy did not provide coverage for Bearden because: (1) the altercation was not an "accident" and therefore not an "occurrence" covered by the policy; and (2) Bearden's no-contest plea established that, as a matter of law, he was engaged in "expected" or "intended" conduct that was "the result of [Bearden's] willful and malicious acts" excluded by the policy pursuant to section 1.a.(1)-(2). The Beardens answered, requesting that the court declare that the policy covered the altercation and that State Farm was required to defend and indemnify them. State Farm moved for summary judgment. The Beardens opposed the motion and cross-moved for summary judgment.

Superior Court Judge Eric A. Aarseth held a hearing on the motions for summary judgment. At the conclusion of the hearing the superior court granted summary judgment in favor of State Farm, ruling that there was no policy coverage for Kent Bearden.[3] Bearden filed a motion for reconsideration. The court denied the motion and further explained its reasoning for granting summary judgment in favor of State Farm:

> A conviction for Disorderly Conduct contains a "knowingly" element. By pleading no contest to this charge, the issue of Mr. Bearden's mens rea was necessarily decided.
>
> .  .  .
>
> Because Mr. Bearden is estopped from re-litigating the issue of mens rea and self-defense, State Farm's Motion for Summary Judgment as to Kent Bearden was properly

---

[3] State Farm initially argued that Linda Bearden's conduct was also excluded from policy coverage. However, the parties subsequently stipulated that all claims State Farm asserted against Linda Bearden were to be dismissed with prejudice, and that State Farm would provide coverage for her defense against Rasmussen. Her insurance coverage is not contested in this appeal.

granted. As a matter of law, Mr. Bearden knowingly entered into the fight that caused Mr. Rasmussen's bodily injuries and Mr. Bearden's conduct was not in self-defense. Therefore, Mr. Bearden's conduct can not be considered an "accident" or "unanticipated, unforseen, and unexpected" from Mr. Bearden's perspective.

(Emphasis omitted.)

Final judgment was entered. Bearden appeals.

## III. STANDARD OF REVIEW

"We review decisions granting summary judgment de novo and will affirm them when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law."[4] "All reasonable inferences of fact are drawn in favor of the nonmoving party."[5] "We also review de novo as a question of law the interpretation of insurance policy language."[6] "The extent to which a civil defendant is collaterally estopped from denying the essential elements of an underlying crime by a conviction based on a previous plea of *nolo contendere* is a question of law."[7]

## IV. DISCUSSION

Bearden argues that State Farm is obligated to defend and indemnify him in Rasmussen's civil action because he was acting in self-defense and was therefore covered by the policy. In order to successfully make this claim, Bearden must show that the superior court incorrectly concluded that he was collaterally estopped from relitigating the issue of self-defense because of his no-contest plea to disorderly conduct.

---

[4] *Se. Alaska Conservation Council v. State*, 202 P.3d 1162, 1167 (Alaska 2009) (internal quotation marks omitted).

[5] *Fejes v. Alaska Ins. Co.*, 984 P.2d 519, 522 (Alaska 1999).

[6] *State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 657 (Alaska 2011).

[7] *Lamb v. Anderson*, 147 P.3d 736, 739 (Alaska 2006).

Further, in order to qualify for coverage, the altercation between Bearden and Rasmussen must fall within the parameters of the policy; specifically the incident must be an "occurrence" as defined by the policy and not excluded by policy exclusions.

**A.** **Bearden's No-Contest Plea Collaterally Estops Him From Re-Litigating The Essential Elements Of His Disorderly Conduct Conviction And From Qualifying For Coverage Under His Insurance Policy.**

In *Lamb v. Anderson*, we set forth a three-part test to determine when a no-contest plea will collaterally estop a civil defendant from relitigating an issue: "(1) the prior conviction is for a serious criminal offense; (2) the defendant in fact had a full and fair hearing; and (3) it is shown that the issue on which the judgment is offered was necessarily decided in the previous trial."[8] Bearden argues that the first and third parts of the *Lamb* test are not satisfied and that his hearing was "not fair to the extent that the plea would subsequently be applied to insurance coverage." Bearden also argues that "as a general principle, a no contest plea should not be allowed to negate liability insurance policy coverage in any case." State Farm counters that Bearden's no-contest plea meets all of the elements of the *Lamb* test. The superior court agreed with State Farm, ruling: "Mr. Bearden plead[ed] no contest to a serious offense, he had a full and fair hearing, and the elements of mens rea and self-defense were necessarily decided. Therefore, he is estopped from litigating those elements in this case." Applying the *Lamb* test, we conclude that the superior court did not err in granting summary judgment to State Farm.

**1.** **Bearden's prior conviction is for a serious criminal offense.**

Anchorage Municipal Code 8.30.120(A)(6) "Disorderly Conduct" makes it unlawful "for any person to . . . [k]nowingly challenge another to fight, or engage in

---

[8] *Id.*

fighting other than in self-defense."[9]  The superior court concluded that Bearden's disorderly conduct conviction constitutes a serious offense because it "is not merely a violation and carries with it a possible sentence of up to 6 months imprisonment.  This potential deprivation of liberty indicates that a conviction for Disorderly Conduct is a serious offense. "

In *Scott v. Robertson*, a predecessor to *Lamb*, we held that a misdemeanor conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs, which carries a maximum penalty of imprisonment of one year and a fine of $1,000 for the first offense, constitutes a serious crime.[10]  We defined a serious offense as one punishable by imprisonment:

> The three conditions which we have set forth as prerequisites to the use of a criminal conviction in a subsequent civil case arising from the same set of facts are designed to protect the defendant against the introduction of unduly prejudicial criminal convictions. *We first require that the prior conviction be for a serious offense in order that the accused have the motivation to defend himself fully.*  A driver who pleads guilty to a minor traffic violation may have decided merely that the costs of defending outweigh the burden of having such a conviction on his record. Such a conviction is not credible evidence of guilty conduct. *Generally, any offense punishable by imprisonment should be considered to be a serious offense.*[11]

---

[9]    AMC 8.30.120(A)(6) (2003).

[10]    583 P.2d 188, 192 (Alaska 1978).

[11]    *Id.* (emphasis added, citations omitted).  In a subsequent case we concluded that all felonies are serious offenses regardless of the amount of time the person spends incarcerated.  *See Howarth v. State, Pub. Defender Agency*, 925 P.2d 1330, 1334-35 (Alaska 1996).

We also noted in *Scott* that "[t]he court may consider arguments that in a particular offense, although technically subject to incarceration, the likelihood of such punishment is so remote as not to justify its being considered as a serious offense for this purpose."[12]

Bearden advances several grounds why his conviction was not for a serious offense. First, Bearden argues that his conviction does not constitute a serious offense because it is a Class B misdemeanor, and "[a] net $500 fine with 5 days in jail is not a serious sanction, and is not an indication that Mr. Bearden pleaded to a serious offense."

While not as "serious" as the misdemeanor in *Scott,* which had a maximum sentence of one year in prison, disorderly conduct is punishable by up to six months in prison, and "[g]enerally, any offense punishable by imprisonment should be considered to be a serious offense."[13] Bearden's conviction is not of the type contemplated in *Scott* where the "the likelihood of [imprisonment] is so remote" that it should not be considered a serious offense; Bearden was sentenced to 90 days of incarceration, and he was actually incarcerated for five days.[14] We agree with the superior court that a conviction that carries with it a possible sentence of up to six months imprisonment is generally a serious offense.

Bearden also asserts that his disorderly conduct conviction does not meet the first part of the *Lamb* test because the actual penalty imposed should determine what constitutes a serious offense, and he "knew at the time he entered his plea what the sanction would be." Bearden's argument implies that he did not have the motivation to defend himself fully since at the time of the no-contest plea he viewed his actual sanction, rather than the potential sanction, as minor.

___

[12]    *Scott*, 583 P.2d at 192 n.17.

[13]    *Id.* at 192; *see also* AMC 8.30.120(C) (2003).

[14]    *See Scott*, 583 P.2d at 192 n.17.

We rejected a similar argument in *Howarth v. State, Public Defender Agency*.[15] In that case, Howarth argued his no-contest plea to second-degree sexual assault was not a "serious offense" within the meaning of *Scott* because he lacked the motive to defend against this charge since he would serve no more time in prison for it.[16] We disagreed, observing, "[A] defendant convicted of a felony — including a defendant who goes free after making a salubrious plea bargain — should not be allowed to claim in court in subsequent litigation that the elements essential to his conviction did not exist. Allowing such a claim trivializes both the conviction and the criminal process."[17] Admittedly Howarth's was an easier case because Howarth pleaded no contest to a felony rather than to a misdemeanor, but the same analysis applies: The fact that Bearden's actual time of incarceration was only a fraction of what could have been imposed should not change his ability to re-litigate the essential elements of the case.[18] Such an approach would create a system where collateral estoppel never applies to

---

[15]    925 P.2d 1330 (Alaska 1996).

[16]    *Id*. at 1331, 1334.

[17]    *Id*. at 1334-35.

[18]    In *Moore v. Peak Oilfield Serv. Co.*, we held that "[d]riving while intoxicated is a serious criminal offense." 175 P.3d 1278, 1280 (Alaska 2008). We noted that "Moore was sentenced to ten days of unsuspended jail time for the offense." *Id*. at 1280 n.4. At first glance it may appear that we considered the actual time served by Moore in determining that his crime was a serious offense. However, the statute he pleaded no contest to, AS 28.35.030(b)(1)(A), states, "the court shall impose a *minimum sentence* of imprisonment of . . . *not less than* 72 consecutive hours . . . ." (Emphasis added.) Since Moore's sentence was longer than the minimum required, and we held that driving while intoxicated is a serious criminal offense generally, we did not take into consideration the actual length of incarceration Moore received.

defendants who accept plea bargains. We rejected this approach in *Howarth* as undesirable as a matter of public policy,[19] and we reject it again today.

Finally, Bearden argues that he lacked the requisite motivation to defend himself fully because he entered his plea "just to make the matter 'go away.' " When asked if he had anything he would like to say at his sentencing hearing, Bearden responded, "I guess I — I agree to this. I didn't do any of the things that I've been charged with, the assault. And I take the plea that I have. It's — if Your Honor will honor that." In an April 2011 affidavit prepared after the hearing granting summary judgment to State Farm, Bearden stated:

> 8. I accepted this offer, and pleaded "no contest" for several reasons, among them being:
>
> (A)  The case would have been very expensive to defend and take to trial, and I could not afford that expense.
>
> (B)  The proposed punishment was a lot less than I would have received had I been convicted of assault.
>
> (C)  These matters were causing a lot of stress between my wife and I during this period of time, and I wanted this stress to end for both of us so that we could both get on with our lives.
>
> 9. By accepting this agreement, I did not admit to any of the allegations of the charge for the purpose of affecting my insurance policy coverage. In fact, I did not believe that this disposition of the charge against me would affect any policy coverage that I might have under the actual facts of [this] case.

As described above, we adopted the requirement that collateral estoppel may only be applied to "serious offenses" in order to distinguish cases where a defendant is fully motivated to defend himself from those cases where a defendant "may have

---

[19]  *See Howarth*, 925 P.2d at 1334.

decided merely that the costs of defending outweigh the burden of having such a conviction on his record."[20] This approach creates uniformity and prevents us from having to guess at a defendant's subjective reasons for pleading no contest to a given offense. Having concluded that the offense Bearden pleaded no contest to was a serious offense, our caselaw establishes that Bearden was necessarily motivated to defend himself fully.[21]

Bearden's affidavit also suggests that he may not have known that his insurance coverage could be affected by his no-contest plea. Although Bearden does not argue on appeal that he was not motivated to defend himself fully because he was unaware of the civil liability consequences of his plea, we take this opportunity to again remind trial courts, as we did in *Lamb*, that

> [b]efore a no contest plea is accepted in a case involving serious criminal charges, the record should establish the defendant's understanding that a no contest plea will result in a conviction, just as a guilty plea would, and that this conviction could be used in future cases to establish that the defendant engaged in the conduct involved in the charged offense.[22]

---

[20] *Scott v. Robertson*, 583 P.2d 188, 192 (Alaska 1978).

[21] *See Wilson v. MacDonald*, 168 P.3d 887, 889 (Alaska 2007) (holding that defendant was "precluded from relitigating any elements of assault in the civil case because he pled no contest to assault in the criminal case"); *Lamb v. Anderson*, 147 P.3d 736, 742 (Alaska 2006) (holding that "a conviction based on a no contest plea will collaterally estop the criminal defendant from denying any element in a subsequent civil action against him that was necessarily established by the conviction, as long as the prior conviction was for a serious criminal offense and the defendant in fact had the opportunity for a full and fair hearing").

[22] *Lamb*, 147 P.3d at 742-43.

Even if Bearden had alleged any failure on the part of the district court judge to inform him of the consequences of his plea, the issue would not be ripe for review in the case before us because, as we established in *Wilson v. MacDonald*, the "question of whether a defendant is aware of all of the relevant consequences of his or her plea is a question as to whether the plea itself was knowing and voluntary."[23] It therefore presents "a question as to the validity of the plea itself" rather than to the defendant's motivation to defend himself fully, and "should be resolved through a motion for post-conviction relief or appeal in the criminal case."[24] Bearden's alleged ignorance of the civil liability consequences of his plea is not relevant to our holding that his conviction was for a serious offense. Bearden should have sought post-conviction relief regarding his criminal conviction if he believed the judge failed to inform him of the consequences of his plea.

### 2. Bearden had a full and fair hearing.

Bearden makes a brief argument about part two of the *Lamb* test, whether the defendant had a full and fair hearing. Bearden did not argue in the superior court that he did not get a full and fair hearing in the criminal case. On appeal he briefly states, "The hearing was fair as to the entry of the plea, but was not fair to the extent that the plea would subsequently be applied to insurance coverage." Bearden does not brief this issue any further.

A criminal proceeding — absent some irregularity — is presumed to be fair:

> The requirement of a full and fair hearing is designed to prevent the introduction of the prior conviction where there is substantial question as to its validity. Normally, a criminal

---

[23] 168 P.3d at 889.

[24] *Id.*

conviction, incorporating the high burden of proof on the state and the stringent safeguards against violations of due process, should be admissible absent strong showing of irregularity.[25]

We have suggested that one such irregularity is a lack of representation by counsel,[26] but no such deficiency has been alleged here. And in *Lamb*, we clarified that, absent such irregularity, the fair hearing requirement is met even if the criminal conviction was obtained by a no-contest plea.[27] We therefore conclude that Bearden had a full and fair hearing.

### 3. The proposition for which Bearden's conviction is offered was necessarily decided in the criminal hearing.

The third prong of the *Lamb* test "requires that the proposition for which the conviction is offered must have necessarily been determined at the previous proceeding."[28] Here, Bearden's conviction is offered for the proposition that he knowingly engaged in the altercation with Rasmussen and that his actions were not in self-defense, and that Bearden's actions did not constitute an "accident" within the meaning of his homeowners insurance policy.

Anchorage Municipal Code 08.30.120(A)(6) makes it unlawful for any person to "[k]nowingly challenge another to fight, or engage in fighting other than in self-defense." Bearden argues that the issues of mens rea and self-defense "were not necessarily decided in the previous proceeding," in part because he "admitted nothing and denied that he committed any of the offenses charged." State Farm counters that

---

[25] *Scott*, 583 P.2d at 192.

[26] *Id.*

[27] *Lamb*, 147 P.3d at 744.

[28] *Id.* (citing *Scott*, 583 P.2d at 192).

"the issues of self-defense and Bearden's state of mind, i.e., knowingly, were necessarily decided as part of the no contest plea. The mens rea of disorderly conduct is 'knowingly' and the definition of the crime specifically provides that the fight was 'not in self defense.' " We agree with State Farm's reasoning.

Bearden also argues that it was unclear what he was charged with because AMC 08.30.120(A)(6) prohibits two separate offenses, "knowingly challeng[ing] another to fight," and "fighting other than in self-defense." The judgment simply lists "AMC 08.30.120(A)(6)," but CourtView[29] states online that the charge was "Disorderly Conduct - Challenge to Fight."[30] Bearden maintains that if CourtView is correct, then he "has pleaded to having violated the first part of the Municipal Code — challenging another to fight — but not having pleaded to the second part — fighting and not in self-defense." Therefore, he argues, "it cannot be held as a matter of law that Kent Bearden pleaded away his right to present a self-defense civil case, and that he pleaded away his insurance coverage."

We need not consider Bearden's argument that he pleaded no contest only to the "[k]nowingly challenge another to fight" prong of the ordinance rather than to the ordinance in its entirety because, even assuming this argument is correct, Bearden would

---

[29] CourtView is the court system's online docketing system. We note that CourtView is merely a docketing and case management system. The data entered into CourtView is entered by clerical staff, often after a hearing or after an order or judgment is issued. It is a judge's order, oral or written, or the judgment that is the official disposition of a matter. The dispositional entries in CourtView are not the official acts of a court and cannot be used to contradict the court's official acts.

[30] Online Trial Court Record of 3AN-09-12228CR, ALASKA COURT SYSTEM, http://www.courtrecords.alaska.gov/eservices/casedetail.page.6?x=dknSUpq2FDmto ZJr729mx3muV3n3L6zI-u9QIiwFDbU (last visited October 10, 2012).

still be precluded from arguing that he was acting in self-defense or that his actions were covered by his homeowners policy.

Bearden could not "knowingly challenge another to fight" and subsequently claim self-defense in a criminal prosecution. Alaska's self-defense statute, AS 11.81.330, prohibits a person from relying on self-defense where "the person claiming self-defense was the initial aggressor."[31] In *Bangs v. State*, we clarified that "[t]he law of self-defense is designed to afford protection to one who is beset by an aggressor and confronted by a necessity not of his own making."[32] In *Bangs*, we held that a defendant was the initial aggressor and could not claim self-defense as a matter of law, where the defendant armed himself and challenged the victim to physical combat with the apparent purpose of provoking a response.[33] Similarly, here Bearden could not challenge another to fight and subsequently claim that any aggression or necessity he confronted in response to his challenge was not of his own making.[34] Thus, even if Bearden subjectively pleaded no contest to the first prong of AMC 08.30.120(A)(6) and not to the second prong, he still would have been precluded from asserting self-defense in the criminal matter.

Bearden's homeowners policy also precludes coverage under either of the ordinance's two prongs. Bearden's policy states that State Farm will defend him "[i]f a claim is made or a suit brought against an insured for damages because of bodily injury

[31]     AS 11.81.330(a)(3).

[32]     608 P.2d 1, 5 (Alaska 1980) (quoting *State v. Millett*, 273 A.2d 504, 510 (Me. 1971)).

[33]     *Id.* at 2, 5.

[34]     *See Dawson v. State*, 264 P.3d 851, 857 (Alaska App. 2011) (observing that the "act of 'challenging' another to fight clearly involves daring or inviting someone else to engage in mutual fighting").

or property damage to which this coverage applies, caused by an occurrence." (Emphasis omitted.) The policy defines "occurrence" in pertinent part as "an accident . . . which results in . . . bodily injury . . . during the policy period." "Accident" is not defined by the policy. However, we discussed the meaning of "occurrence" and "accident" in a State Farm automobile insurance policy in *Shaw v. State Farm Mutual Automobile Insurance Co.*:

> What counts as an "accident" is not defined by Shaw's insurance policy. When the language of a policy provides no guidance in the definition of its terms, we may determine the policy's meaning by examining case law interpreting similar provisions. We have previously "defined the term 'accident' as 'anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected.' " Further, we have held that whether an occurrence is unanticipated, unforeseen, and unexpected is to be determined from the perspective of the insured.[35]

The act of "knowingly challeng[ing] another to fight," cannot be something "that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected."[36] A challenger to a fight cannot fail to anticipate, foresee, or expect an injury to either the challenger or to the challenger's foe. Indeed, it seems that by "knowingly challeng[ing] another to fight," a challenger necessarily anticipates, foresees, or expects some injury on the part of his foe. Thus, even if Bearden pleaded no contest to "knowingly challeng[ing] another to fight," he is precluded from arguing that his actions constituted an "accident" within the purview of his policy because this issue was necessarily decided at his criminal hearing. And, for the reasons explained

---

[35]    19 P.3d 588, 590 (Alaska 2001) (quoting *Fejes v. Alaska Ins. Co., Inc.*, 984 P.2d 519, 523 (Alaska 1999) and citing *C.P. v. Allstate Ins. Co.*, 996 P.2d 1216, 1223 (Alaska 2000)).

[36]    *Id.* (quoting *Fejes*, 984 P.2d at 523).

above, if Bearden's no-contest plea only related to the "fighting other than in self-defense" prong of AMC 08.30.120(A)(6), his actions are still precluded from coverage.[37]

### 4. Public policy does not prevent a no-contest plea from negating insurance coverage in this case.

Bearden makes several policy arguments that "the application of collateral estoppel to insurance coverage cases [is] manifestly unfair." These policy arguments present questions of law. "We apply our independent judgment to questions of law, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[38]

First, Bearden argues that the subject of loss of insurance coverage is "virtually never discussed" between a criminal defendant and his criminal defense attorney and that applying collateral estoppel to an insurance coverage dispute "will harm the defendant because he unknowingly will lose his insurance coverage when that was never intended." This argument could be made for any kind of civil case that may arise from the same events as the criminal case in which a no-contest plea is entered. Moreover, we addressed this issue in *Wilson*, where, as explained above, we held that the question whether a defendant is aware of all of the relevant collateral consequences of his plea should be resolved through a petition for post-conviction relief or appeal in the criminal case.[39] Absent such a petition and its final resolution in his favor, Bearden's no-contest plea is not "manifestly unfair" as a matter of law.

---

[37]    In his appellate brief Bearden separately argues that the fight was an "occurrence" within the terms of his homeowners insurance policy. For the reasons stated herein, we disagree.

[38]    *Lamb v. Anderson*, 147 P.3d 736, 739 (Alaska 2006) (internal quotation marks omitted).

[39]    *See Wilson v. MacDonald*, 168 P.3d 887, 889 (Alaska 2007).

Second, Bearden asserts that "to apply collateral estoppel of the defendant to insurance coverage cases harms the injured party — a totally innocent party — by requiring him or her to bear the burden of the loss of the insurance coverage and [loss] of compensation for the injuries suffered." However, losing insurance coverage does not mean that the injured party, in this case Rasmussen, cannot sue and recover from the defendant. It is true that if Rasmussen prevails against Bearden, Bearden may not be able to satisfy a judgment in favor of Rasmussen (because of a lack of assets), whereas the insurance company could satisfy the judgment. But even so, this policy argument presents a question for the legislature, not this court, to answer.

Third, Bearden contends that "[t]he insurance carrier has received a premium payment to provide coverage for the incident which resulted in the loss" and "[t]he manner in which the defendant resolves issues of criminal liability resulting from the incident should be totally irrelevant to insurance coverage." This argument is also unpersuasive. An insurance policy is a contract between the insurance company and the insured. This contract sets out the terms under which the insurer will defend and indemnify the insured. There are specific definitions of coverage and exclusions that create and fix the circumstances under which an insured will be covered for an occurrence. If those excluded circumstances constitute knowing criminal conduct and the insured pleads no contest to criminal charges that are expressly excluded by the policy terms, the insured's resolution of such criminal charges will necessarily affect policy coverage. An insured should not be able to take advantage of a no-contest plea in the criminal setting and then avoid the contractual ramifications of that plea in a civil setting. We have previously recognized the undesirability of such an approach.[40]

---

[40] See Howarth v. State, Pub. Defender Agency, 925 P.2d 1330, 1335 (Alaska 1996) ("Allowing such a claim trivializes both the conviction and the criminal process.").

Lastly, Bearden relies on *Allstate Insurance Co. v. Takeda* from the U.S. District Court in Hawai`i[41] to argue that case law from other jurisdictions "establishes that a no contest plea does not automatically negate insurance coverage as a matter of law." In that case, Takeda pleaded no contest to assault for hitting a man with a pole.[42] The man sued Takeda for injuries, and Takeda tendered the defense of that action to Allstate on the grounds that he had acted in self-defense and was covered by his insurance policy.[43] Allstate sought a declaratory judgment that it was not required to defend Takeda because Takeda's acts were not an "occurrence" or that coverage was precluded by the exclusions listed in the policy.[44] The court rejected Allstate's argument and declined to grant summary judgment, noting that under Hawai`i law, a no-contest plea and a subsequent conviction are nonconclusive evidence of criminal intent that, without more, cannot negate a claim of self-defense.[45] The court thus held that there was a question of fact as to whether Takeda had acted in self-defense and whether his acts were covered by the policy.[46]

Hawai`i's treatment of collateral estoppel differs fundamentally from our own. Our estoppel doctrine establishes that, where the three-part *Lamb* test is met, a defendant is collaterally estopped from relitigating all the essential elements of his

---

[41]   243 F. Supp. 2d 1100 (D. Haw. 2003).

[42]   *Id.* at 1102.

[43]   *Id.*

[44]   *Id.* at 1101.

[45]   *Id.* at 1107-08 (citing *Hawaiian Ins. & Guar. Co. v. Blanco*, 804 P.2d 876, 880 (Haw. 1990), *overruled on other grounds by Dairy Rd. Partners v. Island Ins. Co.*, 992 P.2d 93 (Haw. 2000)).

[46]   *Id.*

conviction, including his state of mind; thus, unlike Hawai`i, we treat a no-contest plea and a subsequent conviction as conclusive proof of the essential elements of a crime, so long as the *Lamb* test is met.[47] We are bound by our own well-established precedent, not by Hawai`i law, and we remain convinced that ours is the more prudent approach.

## V. CONCLUSION

Bearden's no contest plea collaterally estops him from relitigating the essential elements of disorderly conduct. Because this is so, his conduct is not an "accident" and not an "occurrence" covered by his State Farm homeowners insurance policy. For these reasons, we AFFIRM the superior court.

---

[47] *Lamb v. Anderson*, 147 P.3d 736, 744 (Alaska 2006). In *Wilson v. MacDonald*, 168 P.3d 887, 888 (Alaska 2007), for example, we held that a man who pleaded no contest to assault but tried to argue self-defense in the ensuing civil action was precluded from relitigating any elements of the assault, thereby rejecting a nearly identical argument as that accepted by the district court in *Takeda*. *See Takeda*, 243 F. Supp. 2d at 1107-08.